UNITED STATES of America,
Appellee,

v.

John A. D'ANNA and Rita D'Anna,
Defendants-Appellants.

No. 94, Docket 71–1420.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1971.

Decided Oct. 27, 1971.

**1202**

Michael I. Saltzman, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, New York City, and Ross Sandler, Asst. U. S. Atty., New York City, of counsel), for appellee.

Milton S. Gould, New York City (Shea, Gould, Climenko & Kramer, New York City, and Michael Lesch, New York City, of counsel), for appellants.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Defendants, John D'Anna and Rita D'Anna, appeal from judgments of conviction entered after a four day jury trial. Appellants were found guilty of wilfully attempting to evade their Federal income taxes for the years 1963 and 1964 under Counts One and Three of the indictment, 26 U.S.C. § 7201,[1] and of making and subscribing joint Federal income tax returns for the same years knowing them to be materially false under Counts Two and Four of the indictment, 26 U.S.C. § 7206(1).[2] John

---

1. 26 U.S.C. § 7201 (1964) provides:
    "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony * * *."

2. 26 U.S.C. § 7206(1) (1964) provides:
    "Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony * * *."

D'Anna was sentenced to 60 days on each Count to be served concurrently and was fined $500 on each Count for a total fine of $2,000. Rita D'Anna was similarly sentenced to 60 days on each Count to run concurrently. Execution of her sentence was suspended and she was placed on probation for one year.

The appellants contend that there are four reasons for reversing their convictions. First, they claim that there was a prejudicial variance between the indictment and the proof on Counts Two and Four. Secondly, it is asserted that the District Court erred in excluding certain testimony. Thirdly, appellants point to allegedly improper remarks of the prosecutor in his summation and contend that these worked to deprive them of a fair trial. Lastly, appellants claim that the Trial Judge's frequent interjections and questions created an atmosphere which made a fair trial impossible. For the reasons stated below, this Court finds that no reversible error was committed.

*The Facts*

The appellant, John D'Anna, is a surgeon with a substantial practice. His office was located at his home. His wife, Rita D'Anna, worked as his secretary, bookkeeper and assistant during the years in question. By 1962 the D'Annas had had seven children. Thus, superimposed upon her work for the doctor, she had the responsibility of maintaining the household. They do not dispute the fact that their joint tax returns for the years 1963 and 1964 materially understated their actual gross income.[3] Their sole defense is that the errors in the returns were not "wilfull."

In support of their defense theory, the appellants were able to introduce evidence of a chain of events which allegedly caused them to be negligent in filling out their returns. The first of these events was the accidental drowning of their two year old daughter in July, 1962. Apparently Mrs. D'Anna felt that she was in part responsible for this death and was despondent over it. In January 1963 Mrs. D'Anna's mother and her father, who suffered from heart disease and was terminally ill with cancer, moved into the D'Anna home. In January 1964 Mrs. D'Anna's father died. Other evidence which the jury had a chance to evaluate pointed to the fact that Mrs. D'Anna was physically ill during the years in question. Additional evidence indicated that Dr. D'Anna was working long hours under adverse family conditions.

According to the appellants, Mrs. D'Anna kept the financial records upon which the returns were based. After she prepared the information to be used, Dr. D'Anna would read these figures to their attorney who would then complete the returns.

The Government's case consisted, primarily, in showing that the D'Annas' gross receipts exceeded their reported gross receipts. It was shown, for instance, that the bank statements upon which the appellants claimed that their returns were based did not reflect a number of third party checks cashed by the appellants. Additional evidence indicated that Dr. D'Anna was neither completely accurate nor completely consistent in his statements to an Internal Revenue Agent who was investigating his returns.

*The Indictment*

The indictment was filed on March 23, 1970. Counts Two and Four of the

3. Appellants' Brief, pages 3, 4, provided the following chart:

|  | *1963* | *1964* |
|---|---|---|
| Gross Professional Receipts Reported | 57,142.50 | 55,959.51 |
| Unreported Professional Receipts | 16,202.45 | 21,145.26 |
| Total Gross Professional Receipts | 73,344.95 | 77,084.77 |
| Taxable Income per Return | 27,466.95 | 18,899.73 |
| Corrected Taxable Income | 43,699.40 | 40,044.99 |
| Tax per Return | 8,271.34 | 4,370.09 |
| Tax Due | 16,555.41 | 12,908.39 |

indictment charged the appellants with stating in their income tax returns their gross receipts for the years 1963 and 1964 to be $38,332.82 and $32,712.77 respectively, though they knew their gross receipts to be greater.

On August 28, 1970, the Government filed a bill of particulars which indicated that the appellants had in fact stated in their income tax returns their gross receipts to be $57,142.50 and $55,959.51 for the years 1963 and 1964 respectively. The figures given in the bill of particulars were the correct amounts stated by the appellants. At trial the Government proved that the D'Annas' actual gross receipts were $73,344.95 and $77,084.77 for the years 1963 and 1964 respectively. Thus, the effect of the error in the indictment was to overstate the unreported gross receipts for each year and this resulted in a corresponding overstatement of unpaid taxes due.

At the conclusion of the Government's case, the appellants moved for a judgment acquitting them of the charges contained in Counts Two and Four of the indictment. The motion was denied. Rather than acquitting the appellants, the District Court, relying on United States v. Feldman, 299 F.2d 914 (2d Cir.), cert. denied, 370 U.S. 910, 82 S.Ct. 1256, 8 L.Ed.2d 403 (1962), instructed the jury to disregard the errors and to consider the indictment as if the figures had been correctly stated. This, the appellants contend, violated their Fifth Amendment right to an indictment by a Grand Jury.

■■ The two primary functions of an indictment are to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Whether a variance between the indictment and the proof is fatal to the prosecution will depend on

determining whether these "substantial rights" of the accused have been adversely affected. Berger, *supra*, at 82, 55 S.Ct. 629; Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960).

■ In United States v. Feldman, *supra*, this Court held that an indictment which charged extortion of $45,000 while the proof showed the correct figure to be $65,000 was not fatally defective. Therein, as here, the bill of particulars fairly apprised the accused of the charges against him and indicated the evidence that would be introduced to support the charges against him. There was no possibility of double jeopardy. These principles control the issue here.

The bill of particulars in the instant case clearly indicated the proof that the Government would rely upon in the prosecution. There is no question of double jeopardy. No "substantial rights" have been affected by the variance. The District Court's ruling was correct.

*The Excluded Testimony*

■ The appellants' defense was that the understatements in their joint tax returns were not "wilfull." United States v. Baird, 414 F.2d 700, 702 (2d Cir. 1969), cert. denied, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); United States v. Driscoll, 399 F.2d 135, 136 (2d Cir. 1968). To show that their conduct was inadvertent, defense counsel sought to introduce evidence concerning the appellants' states of mind. As noted, counsel was successful in placing most of this evidence before the jury. The portions of the testimony excluded by the Trial Judge are the basis of the appellants' second contention.

The excluded testimony was to be elicited from two of the defense witnesses, Dr. Milton M. Edelman and Dr. Vincent M. Sottile, neither of whom was, or was called as, an expert in the field of psychiatry.[4] Both had virtually daily

---

4. Dr. Edelman by his own admission is a "specialist in internal medicine." He had become a psychiatrist subsequent to the events concerning which he testified but his testimony was not offered as expert testimony. Dr. Sottile was also a "specialist in internal medicine" (179a).

communication with Mrs. D'Anna during the period in question though not treating her in their medical capacities. They were permitted to testify as to their observations of Mrs. D'Anna and to their conclusions about her state of mind. They were not permitted to testify to anything that she had told them about herself during the period in question. The Court ruled that this would be hearsay. Appellants contend that in this respect such statements by her should have been admissible as "verbal acts."

In claiming that Mrs. D'Anna's statements were "verbal acts" not subject to the hearsay rule, the appellants rely on United States v. Baird, *supra*. Therein this Court held that an alienist could testify to statements made to him by a defendant during an examination. These self-serving statements were ruled admissible on the theory that they were "real evidence" upon which the alienist had based his diagnosis. United States v. Baird, *supra*, 414 F.2d at 709. This situation in *Baird* was quite different from that presented here. In the instant case, the defense witnesses, though doctors, were testifying about their observations as ordinary witnesses. There was no expert diagnosis for the jury to evaluate. To find the appellant's statements to these witnesses admissible under the "verbal acts" doctrine would create an unwarranted extension of the doctrine.

*Baird,* so much relied upon by the appellants, actually supports the position of the Trial Court and the Government. In *Baird* two defenses were interposed (1) that defendant's failure to file was not "wilful" and (2) that defendant lacked the capacity to appreciate the wrongfulness of his act because of "a mental disease or defect." The latter defense called for testimony from psychiatric experts. One of the psychiatrists for the defense was permitted to testify to numerous out-of-court statements by Baird during his examination by the psychiatrist. This Court held that, although these self-serving hearsay

declarations were generally not admissible on the "wilfullness" issue, they were admissible not for the truth or falsity thereof but "as a description of the material on which the doctors based their opinions." *Baird* at 704. This limitation was recognized by the Trial Judge in *Baird* when he advised counsel "If any question is put to the doctor by the government as to what the defendant told the doctor and if an objection for the defendant is made to such a question, I will sustain the objection if the question relates to whether defendant's failure to file was wilful or not, * * * *", but he allowed the testimony as a basis for the experts' opinions as to the "insanity defense." *Baird* at 705, 709. An "insanity defense" might well bear upon the question of wilfulness because both involve a state of mind but here the defense expressly disavowed any such defense. Counsel said, "There is no claim of insanity" (Tr. 182) and, when pressed by the Trial Court as to a claim of "mental defect or disease" or "lack of wilfulness", said "It is solely lack of wilfulness." (Tr. 183).

Furthermore, at no point in the briefs or in oral argument have the appellants suggested what additional evidence from them—self-serving though it would have been as to their conversations with their friends, Drs. Edelman and Sottile—would be added to that already in the record. The entire factual background of the appellants' defense was before the jury. Both doctors were permitted to state their conclusions as to Mrs. D'Anna's condition. Additionally, the appellants took the stand in their own defense and were able to testify to their own states of mind and the tragedies which had come upon them in their family life. It is also difficult to understand how the excluded statements would relate to Dr. D'Anna's conviction.

*The Prosecutor's Summation*

The appellants' third contention relates to two statements by the prosecutor in his summation. In closing, the prosecutor twice asked the mem-

bers of the jury to consider the fact that they as citizens carry an additional burden when someone does not pay his taxes. Such statements were improper. A prosecutor should not be permitted to indulge in oratorical flights that seriously endanger a defendant's right to a fair trial but the question to be answered is whether these statements deprived the D'Annas of a fair trial. Buttermore v. United States, 180 F.2d 853, 857 (6th Cir. 1950) ; United States v. Lotsch, 102 F.2d 35, 37 (2d Cir.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939).

■■ Whenever an attorney passes the bounds of permissible comment on summation, opposing counsel should object. The Trial Judge could then, if required, reprove the offending counsel or declare a mistrial. *Buttermore, supra,* 180 F.2d at 857. Defense counsel in the instant case did not raise any objection to the prosecutor's statements at the time of the summation. While a particular set of facts might require a reversal in the absence of an objection, the record before the Court does not indicate that the appellants were deprived of a fair trial by the prosecutor's statements.

*The Trial Judge's Interjections and Questions*

The appellants' final contention is that the Court overstepped the limits of permissible trial control and thereby deprived the appellants of a fair trial.

■ It is imperative for our judicial system to have judges who are impartial. While it might be proper for a judge to question witnesses to clarify issues, such intervention should not become the rule. United States v. Switzer, 252 F.2d 139, 144 (2d Cir.) cert. denied, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958). The judge's interjections and questions should not so unnerve counsel as to impede the presentation of evidence. Bursten v. United States, 395 F.2d 976 (5th Cir. 1968). Whenever it is necessary for a judge to take an active role in a trial, he should never manifest any bias. This task is difficult when witnesses or counsel are recalcitrant, but judges should meet such situations with restraint. Against these generalities the record must be searched for the reasons which may have prompted such intervention by the trial judge. The appellants particularly complain of over-participation by the trial judge in the examination of the two doctors called as defense witnesses. It was obvious from the opening of the defense and the concession by counsel that there was going to be no psychiatric question that the trial judge intended to stay within the limitations of *Baird* as to statements by the D'Annas as to their state of mind. All attempts to introduce such statements were met with sustained objections. The judge had been advised that there was to be no claim of mental disease and that no psychiatric experts would be called to testify that they based their opinions on anything the D'Annas might have said which could be placed in the category of "verbal acts." When he saw that the defense was endeavoring to introduce testimony only justified by a defense of mental disease supported by psychiatric testimony, he naturally resisted injecting testimony not germane to, or admissible on, the sole issue before him.

Against these standards the record indicates that while the trial judge may have played a more active role than desirable in most cases, the particular circumstances of each individual situation must govern the appellate conclusion. Considering the record as a whole, it is concluded that appellants were not deprived of a fair trial and that all the facts relating to their defense of lack of wilfulness reached the jury by means of an accurate charge. Additionally, the important factor in this determination is that the trial judge charged the jury that they were to draw no conclusions from his participation in the conduct of the trial. While such a charge will not overcome all judicial improprieties, it was sufficient under the circumstances of this case. United States v. Curcio,

279 F.2d 681, 682 (2d Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960).

Appellants' final argument is that while no one of their contentions would require a reversal, the cumulative effect of the errors worked to deprive them of a fair trial. The record does not support this argument.

Affirmed.