**Leroy P. COLEMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 6350.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1972.

Decided Dec. 12, 1972.

---

Thomas W. Farquhar, Washington, D. C., appointed by this court, for appellant.

Barry Estrin, Atty., Department of Justice, with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted of two counts of burglary in the second degree, D.C.Code 1967, § 22–1801(b) (Supp. V, 1972), two counts of grand larceny, D.C.Code 1967, § 22–2201, and one count of attempted burglary, D.C.Code 1967, §§ 22–103, 22–1801(b) (Supp. V, 1972).

Appellant contends that the trial judge erred in denying his motion for severance of certain counts; additionally, he alleges that his pre-trial photographic identification was conducted in a manner that violated his fifth and sixth amendment rights. Disagreeing with appellant, we affirm.

Appellant's convictions arose out of a series of events which took place within one block of the intersection of 25th and I Streets, N.W. Miss Nancy Smith of 2513 I Street, N.W., returned home from work on the evening of April 13, 1971, to discover that her home had been burglarized. Items which were taken included a full-length mink coat, a mink stole, a Florentine gold dome ring with three small diamonds, a silver charm bracelet, a portable radio, some money, and a blue and gold watch with a gold chain. Nine days later, on April 22, Miss Barbara Zamboldi noticed a man peering through her kitchen window at the rear of her home at approximately 8:30 a. m. She went upstairs, opened the back door on the upper level, and asked the man if she could help him. This man, whom Miss Zamboldi described as a thin black man, about 5′ 9″ tall, wearing tinted glasses, a dark-colored trench coat and a hat with a feather, said that he was looking for *Doris Alexander*. Miss Zamboldi told him that no one named *Alexander* lived there, and he left through the back gate. Later that same morning, at about 10 a. m., Miss Zamboldi's roommate, Karen Elizabeth Kramer, saw a man looking in the back window of her house. She became frightened and immediately called the police, who responded within a few minutes. Miss Kramer described the

man to the police as having a slight build and wearing a khaki coat and dark fedora-style hat.

The police responding to the call found a man trying to pry open the lower level window at the rear of 943 25th Street, three doors away from Miss Kramer's home. When the officer asked the individual what he was doing, appellant turned around, dropping a butter knife and a screwdriver. After placing appellant under arrest, the officer searched him and seized the following: a pair of latex rubber gloves; another screwdriver; a purse containing seven Kennedy half-dollars, two silver dollars, a British coin, and two quarters; a woman's Bulova watch; a man's wristwatch; a lady's blue metal chain watch; a wedding ring; a woman's dome-type ring with three stones; and $536 in cash including three $100 bills.

Later that same day (April 22), Mrs. Maria Tyler reported that her home had been burglarized while she and her husband were at work. After a careful check she discovered that a coin purse containing Kennedy half-dollars, silver dollars, and an English crown or half crown had been taken. The Tyler residence is located between Miss Kramer's house and the house where appellant was apprehended.

During the trial Miss Smith identified as hers the woman's watch and the dome ring which had been seized from appellant. Mrs. Tyler likewise identified the coin purse. The Government also called Mr. Rixey Taylor and Miss Benita Belden who testified about an encounter they had with appellant. Mr. Taylor testified that at approximately 1 p. m. on April 13, 1971, he saw appellant enter the back gate at 2511 I Street, N.W. Appellant was wearing a "London Fog" and a "conventional hat."

Later, at approximately 3 p. m., Mr. Taylor saw appellant again; this time he was peering into the window of 921 Hughes Mews, the home of Miss Belden. Mr. Taylor went out on the stoop of his house and asked, "What are you looking for anyway?" Appellant replied, "I'm looking for *Mr. Alexander.*" As Mr. Taylor spoke to appellant, Miss Belden appeared at the door and overheard Mr. Taylor tell appellant, "We have two *Alexanders.*" Appellant then left.

### I. The Severance Motions

▮▮▮ Appellant's contention that the court erred in not granting his motion for relief from prejudicial joinder of counts is not well founded.[1] The decision to sever counts is committed to the sound discretion of the trial judge under Superior Court Criminal Rule 14, and this court will reverse only where the record manifests a clear abuse of discretion.

▮▮▮ The rationale underlying the granting of a motion to sever pursuant to Superior Court Criminal Rule 14[2] is well settled in this jurisdiction. The counts should be severed if it is shown that the jury may cumulate evidence of the separate crimes, or that the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt, or where the defendant may become embarrassed or confounded in presenting different defenses to different charges. Drew v. United States, 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964). However, where, as in the instant case, evidence of each joined offense would be admissible in a separate trial for the other, the first two dangers are largely absent. Blunt v. United States, 131 U.S. App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968), cert. denied, 394 U.S. 909, 89 S.Ct.

1. Appellant's initial contention that the counts were misjoined under Super.Ct. Crim.R. 8(a) is without merit. Hill v. United States, 135 U.S.App.D.C. 233, 418 F.2d 449 (1968); Gray v. United States, 123 U.S.App.D.C. 39, 356 F.2d 792 (1966); Drew v. United States, 118 U.S. App.D.C. 11, 331 F.2d 85 (1964); Williams v. United States, D.C.App., 263 A.2d 659 (1970).

2. Super.Ct.Crim.R. 14 and 8 are identical to Fed.R.Crim.P. 14 and 8.

1021, 21 L.Ed.2d 221 (1969); Baker v. United States, 131 U.S.App.D.C. 7, 23, 401 F.2d 958, 974 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970).

■ The Government does not contend that all the details of proof would be mutually admissible in separate trials—only that significant portions would properly be received. We agree. If there had been separate trials on each of the counts, there would have been a substantial overlap of evidence and, as we stated in Williams v. United States, D.C.App., 263 A.2d 659, 662 (1970), "the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." [Citations omitted.] Here, all circumstances considered, we cannot say that the trial judge abused his discretion.[3]

## II.  The Photographic Identification

Appellant contends that his pre-trial photographic identification was conducted in a manner that was impermissibly suggestive, in violation of his fifth amendment right to due process of law, in that the display included photographs of persons in fact younger than appellant and the identification occurred seven months after his arrest and while in custody.[4] The facts relating to that identification, not set out previously, are as follows.

Initially, it appeared that the Government intended to rely on the in-court identification of appellant by Miss Cheryl Strange, Miss Carol Schwartz and Officer Gadovchek. However, just prior to trial the Government abandoned Miss Strange and Miss Schwartz as witnesses for reasons not apparent in the record. Detective Franek of the Metropolitan Police Department assembled a display of ten photographs, nine of which were similar in appearance, and sought to re-interview witnesses. Both Mr. Taylor and Miss Belden recognized appellant immediately when shown the display without any prompting or knowledge that appellant's photograph

---

3. We do not consider appellant's contention that joinder was prejudicial in that it deprived him of an opportunity to present a defense, because no basis was laid for that assertion. As the United States Court of Appeals for the District of Columbia held in Baker v. United States, 131 U.S.App.D.C. 7, 26, 401 F.2d 958, 977 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970):

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information . . . to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying. [Footnotes omitted.]

Appellant did not mention the nature or the importance of any of the evidence he wished to submit. Finally, it is noted that the Government commendably offered to refrain from any cross-examination regarding offenses not testified to by appellant.

4. We do not consider appellant's contention that he was entitled to be represented by counsel at the photographic identification which took place after he was in custody and under indictment. It is this court's duty to avoid constitutional issues presented unless their resolution is essential to a proper disposition of a case. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Barr v. Matteo, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957). In the instant case, even if we were to agree with appellant's contention, that agreement would not affect our disposition of the case. Here, the totality of the circumstances forces the conclusion that the asserted error—if it was error—was harmless beyond a reasonable doubt. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Brewster v. United States, D.C. App., 271 A.2d 409 (1970). See also In re T.W., D.C.App., 295 A.2d 69 (1972). Here, appellant was caught in the process of attempting a burglary with proceeds on his person of other burglaries recently committed in the neighborhood.

was included. The display was preserved and was introduced into evidence at trial where appellant's attorney had an opportunity to cross-examine the Government witnesses concerning the manner in which the identification took place. The trial judge also had an opportunity to examine the display for its physical fairness.[5] The Supreme Court in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L. Ed.2d 1247 (1968), held as follows:

> [T]hat each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable misidentification*. [Emphasis added.]

There is no contention that the photographs were not similar in appearance except that appellant's head was a little larger. This distinction is irrelevant since the witnesses saw appellant on the day of the offense with his hat on. The fact that appellant was older than the persons shown in the photographs is also irrelevant since their appearances were similar.

■ While lapse of time may be a factor in determining suggestibility, that, standing alone, is not sufficient unless it is in fact shown to be prejudicial. No such showing has been made on this record. We hold that on this record "the photographic identification procedure was [not] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The judgment of the trial court is

Affirmed.

5. We are informed that the reason the photographs are not in the record is that they have been misplaced and cannot be located. We think the issue presented can be resolved without our viewing the photographs.