UNITED STATES of America,
Appellee,

v.

Gabriel MARIN, Defendant-Appellant.

No. 736, Docket 74–2606.

United States Court of Appeals,
Second Circuit.

Submitted March 3, 1975.

Decided April 15, 1975.

Rubin, Gold & Geller, New York City; Lawrence Stern, Brooklyn, of counsel, for defendant-appellant.

Paul J. Curran, U. S. Atty., S. D. N. Y.; T. Gorman Reilly and John D. Gordan, III, Asst. U. S. Attys., of counsel, for appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and BARTELS,* District Judge.

FEINBERG, Circuit Judge:

Appellant Gabriel Marin was indicted by a grand jury in the United States District Court for the Southern District of New York for possession of one gram of cocaine with intent to distribute it. 21 U.S.C. §§ 812, 841. At appellant's trial, Judge Marvin E. Frankel submitted the case to the jury on a charge of attempted, rather than actual, possession. This change in theory provides the basis for appellant's principal arguments as to why we should set aside his conviction.[1] Finding no error in these respects or in the others urged upon us, we affirm the judgment of conviction.

## I

Although the case is a simple one and took only two days to try, the facts must be set out in detail for a full understanding of the issues on appeal. From the evidence, the jury could have found the following: The chief government witness, Jose Manuel Caicedo, was en route from Bogota, Colombia to New York when he was searched in December 1973, while attempting to clear Customs in New Orleans. Customs agents found bags of cocaine and a piece of paper with defendant's name and telephone number on it as a potential buyer of cocaine. Caicedo was arrested and agreed to cooperate with agents of the Drug Enforcement Administration (DEA). In that enterprise, Caicedo went to New York, reached appellant by telephone, and identified himself by referring to the mutual friend who had furnished Marin's number to Caicedo in Bogota. This call, recorded by DEA agents, contained incriminating references to the "merchandise," its quality and the price ($650 per ounce for the entire six ounces Caicedo had brought with him).

Thereafter, Caicedo and Marin met in a bar while undercover agent Raphael Halperin sat outside in a car. Negotiations ensued over whether Marin would have to exhibit the necessary cash first or whether Caicedo would furnish a sample. The latter demand posed a problem because DEA agents had prepared a "dummy" package for delivery to Marin; the package contained four ounces of quinine and starch and a minute amount of cocaine taken from the plastic bags that Caicedo had smuggled in. When Caicedo balked at the request for a sample, Marin complained that such formal treatment ill suited a customer who had dealt with Caicedo's source before in much larger amounts. After further negotiations, Marin and Caicedo met by prearrangement at 11:00 p. m. the next night on the corner of 57th Street and 9th Avenue. Caicedo said he had spoken with their mutual friend in Bogota and she assured him that Marin could be trusted. Therefore, Caicedo explained, he was willing to trust Marin with the four ounce package. Marin said he would try to pay Caicedo the next day and would then pick up the remaining two ounces. Marin took the dummy

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. Appellant was sentenced to 30 months probation on condition he enroll in a Phoenix House drug rehabilitation program.

package from Caicedo and the two men parted. Marin was arrested almost immediately by agents who had observed the transaction.

While under arrest, Marin admitted that he had met the mutual friend in Bogota, who he said was supplying rock musicians with cocaine to smuggle into the United States. He also admitted that he had met with Caicedo to discuss a cocaine transaction, that Caicedo had given him a four-ounce package of cocaine the night before and that Caicedo had told him that when these four ounces were paid for, he would give him two more.[2]

## II

During the Government's case, Judge Frankel pointed out to counsel that there was no substantial evidence that appellant had possessed a legally significant amount of cocaine, since the dummy package contained no detectable amount of the substance.[3] The Government thereupon elected to proceed on a theory of attempt alone. From this, appellant has devised a number of arguments for reversal. These are: (1) The indictment for possession of one gram of cocaine was invalid because the grand jury never had sufficient evidence of that offense to indict. (2) Since the jury was never instructed to disregard the possession charge, the general verdict of guilty may have been for a crime never proved. (3) Even on the changed theory, there was no attempt to commit the offense charged in the indictment—possession of one gram of cocaine—since the only attempt shown was to gain possession of four ounces of cocaine. (4) When arrested, appellant did not yet have "a completely formed belief" about what was in the package. (5) Entrapment was proved as a matter of law. (6) Appellant was entitled to a charge on the misdemeanor offense of simple possession.

The only one of these contentions that gives us pause is the first, but not for long. Under Fed.R.Crim.P. 31(c), a defendant may be found guilty of an attempt to commit a substantive offense, whether or not the attempt was charged in the indictment, provided an attempt is punishable. Here, attempted possession of cocaine is a crime. 21 U.S.C. § 846. In these circumstances, the trier of fact could properly convict for the attempt, for the reasons stated in the admirable opinion of Judge Bryan in United States v. Heng Awkak Roman, 356 F.Supp. 434, 436–38 (S.D.N.Y.), aff'd, 484 F.2d 1271 (2d Cir. 1973), cert. denied, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974). There, as in this case, government agents faked the existence of drugs over which the defendants exercised dominion. Judge Bryan held that an attempt was established when "the defendants' actions would have constituted the completed crime if the surrounding circumstances were as they believed them to be." 356 F.Supp. at 434. Appellant argues that even so the indictment is invalid because the grand jury had no proof that appellant possessed narcotics. It may be that we could reject this contention on the ground that it was not made below; defendant's failure to attack the indictment in the trial court obviously prevented the Government from making a proper record on the point. Cf. Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); United States v. Fistel, 460 F.2d 157, 160–62 (2d Cir. 1972). However, the evidence at trial does indicate that, while Judge Frankel properly found there was insufficient proof of actual possession to support a conviction, there was enough evidence before the grand jury to afford *probable cause* that Marin had possessed some small quantity of cocaine as part of a distribution transaction.

---

2. All of these facts came from government witnesses. Marin neither testified nor presented evidence.

3. A DEA agent testified that when the dummy package was prepared, an attempt was made to put some cocaine in it by dipping the end of

a paper clip in one of the bags of nearly pure cocaine Caicedo had carried and then touching the dummy substance with the clip. Upon chemical analysis, no identifiable quantity of cocaine was found.

■ Appellant's other arguments stemming from the change in theory require less discussion. The judge made clear in his charge that the theory of the Government's case was only attempted possession. Undoubtedly for that reason, the supposed confusion now argued was never pointed out to the court below. The variance between an attempt to possess four ounces and an attempt to possess one gram did not "affect the substantial rights" of Marin. See Berger v. United States, 295 U.S. 78, 82–83, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. D'Anna, 450 F.2d 1201, 1204 (2d Cir. 1971); Calderon v. United States, 269 F.2d 416, 418–19 (10th Cir. 1959). Certainly there was no surprise here that prejudiced Marin in any way. There was proof that appellant had "formed" a belief as to what was in the package; Marin stated after his arrest that Caicedo had given him a package containing four ounces of cocaine. As to entrapment, it is true that the Government proposed to Marin that he take the dummy package of four ounces instead of merely a sample. The reason for doing so was obvious; a test of the substituted harmless ingredient would have disclosed Caicedo's role as an informant. Marin needed no persuasion; cocaine was what he wanted. The issue of entrapment was for the jury and it was properly charged. Finally, Judge Frankel correctly refused to charge the lesser included offense of simple possession of cocaine. 21 U.S.C. § 844. A defendant is entitled to a charge on a lesser crime only if the evidence warrants it. United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975). Here the evidence pointed to the conclusion that Marin planned to distribute the cocaine, not merely possess it.

■ Appellant's remaining points concern the prosecutor's remarks in his opening and closing statements, the jury's taking into the jury room during deliberations the transcripts of appellant's taped conversations, and the display of six ounces of cocaine. The arguments are without merit. Although one of the prosecutor's remarks might have been better left unsaid,[4] there was no objection at trial; certainly, there was no plain error. The procedure followed with the transcripts of the tape recordings, which had been translated from Spanish into English, was apparently agreed to. In any event, it was not error to allow the transcripts into the jury room, United States v. Koska, 443 F.2d 1167, 1169 (2d Cir.), cert. denied, 404 U.S. 852, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971), even though they emphasized "only one side of the entrapment issue, appellant's predisposition";[5] the "other" side of that issue—government inducement— was undisputed. See United States v. Braver, 450 F.2d 799 (2d Cir. 1971), cert. denied, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972). Finally, the cocaine taken from Caicedo was properly admitted; it was the actual substance Marin was attempting to possess with intent to distribute. United States v. Falley, 489 F.2d 33 (2d Cir. 1973), relied on by Marin is distinguishable. *Cf.* United States v. Drummond, 511 F.2d 1049, 1055 (2d Cir. 1975).

Judgment of conviction affirmed.

---

4. The prosecutor pointed out that Caicedo had decided to cooperate with the Government at some risk to himself. There was no compelling evidence of the risk, although perhaps the inference is so obvious as to be self-evident.

5. Appellant's brief, at 31.