UNITED STATES of America, Appellant-Appellee,

v.

Lani M. BROZYNA, Defendant-Appellee-Appellant.

Nos. 344, 316, Dockets 77–1238, 77–1251.

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1977.

Decided Feb. 10, 1978.

Edward Heller, Buffalo, N. Y. (McDonough, Boasberg, Hamsher, Heller & Ramm, Buffalo, N. Y., of counsel), for defendant-appellee-appellant.

Edward J. Wagner, Asst. U. S. Atty., Western District of New York, Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., Western District of New York, Buffalo, N. Y., of counsel), for the United States of America.

Before FRIENDLY, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

On August 29, 1974, Lani M. Brozyna entered King's Department Store in Buffalo, New York. She selected a shotgun and told a department manager that she wanted to buy it. The department manager asked her to fill out a "Firearms Transaction Record," as required by federal law, 27 C.F.R. § 178.124, and he asked to see some identification. Brozyna produced a New York State motor vehicle registration belonging to Mrs. Dorothy Bernys and filled out the

form in that name. When the form was complete, Brozyna tried to pay for the gun with a Master Charge credit card, which also belonged to Mrs. Bernys. She was again asked for identification, and she displayed both the registration and Mrs. Bernys' Social Security card. She signed a Master Charge slip, but when, after a routine check with Master Charge, her use of the card was questioned, Brozyna picked up the Social Security card and registration and left, abandoning the credit card and the shotgun.

A criminal complaint was filed on September 9, 1974, in the Western District of New York, charging Brozyna with using false identification "in connection with the attempted acquisition of a firearm." 18 U.S.C. § 922(a)(6).[1] Two days later, she was arrested, arraigned and released on $2,500 bond. A preliminary hearing was set for September 25, 1974. On the 25th, Brozyna appeared with counsel, but the hearing was adjourned to November 8, 1974. Neither Brozyna nor counsel appeared at that time. The case was adjourned for a second time, and November 15, 1974, was set as a date for the hearing. An arrest warrant was issued after Brozyna failed to appear on November 15. She was arrested in California on February 27, 1975, and was returned to the Western District. On March 13, 1975, an indictment was filed charging Brozyna with bail jumping, 18 U.S.C. § 3150, and using false identification "in connection with the acquisition of a firearm." Although it was clear to all concerned that the sale had not been completed, the indictment, unlike the original complaint, did not use the words "attempted acquisition."

The evidence at trial was clear and virtually uncontradicted. Brozyna took the stand in her own defense. She admitted putting false information on the "Firearms Transaction Record" and offered no justification for having done so. She also admitted that when she left for California she knew she had another court appearance to make. By way of justification, she explained that her love for her boyfriend and his children had required her to accompany him when he fled to California in order to avoid a jail term. The jury convicted her on both counts.

THE INDICTMENT

During the trial Brozyna moved to dismiss the false identification count on the ground that, although the facts may have disclosed the use of false identification "in connection with the *attempted* acquisition of a firearm," the indictment charged the use of false identification "in connection with the acquisition of a firearm." The district court reserved decision on the motion at that time. The motion was renewed after the trial in the form of a motion for a directed verdict of acquittal. After the jury returned with its guilty verdict, the district court granted the motion. The court held that the phrase "in connection with the acquisition" was not broad enough to encompass an "attempted acquisition" and this, the court apparently believed, created a material variance between the indictment and the proof at trial. The court explained that, although the facts of this case would have justified the submission of an attempt theory to the jury under Fed.R. Crim.P. 31(c),[2] the failure of the government to request such a charge precluded him from treating the case as if one had been given. The government appeals from the court's order granting this motion.[3] We reverse. .

---

1. 18 U.S.C. § 922(a)(6) makes it unlawful "for any person in connection with the acquisition or attempted acquisition of any firearm . . from a . . . licensed dealer . . . knowingly . . . to furnish or exhibit any false, fictitious, or misrepresented identification . . . ."

2. Rule 31(c) provides:

*Conviction of Less Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

3. The appeal by the government does not violate the double jeopardy clause because it involves a trial judge's postverdict correction of

■ The district court erred in concluding that 18 U.S.C. § 922(a)(6) creates two separate crimes, "one 'in connection with the acquisition' and the other in connection with the 'attempted acquisition,'" of a firearm. The court appears to have been led into error by the language of the statute itself: the phrase "in connection with the acquisition or attempted acquisition of any firearm" invites analysis in terms of the law of attempt. This invitation is delusory. The statute creates a single offense, the gravamen of which is the use of deceit in order to obtain a firearm. As the Supreme Court explained in *Huddleston v. United States*, 415 U.S. 814, 824–25, 94 S.Ct. 1262, 1269, 39 L.Ed.2d 782 (1974),

> Section 922(a)(6) . . . was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow." 114 Cong.Rec. 13219 (1968) (remarks of Sen. Tydings). Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to a criminal penalty.

The phrase "in connection with the acquisition or attempted acquisition of any firearm" does not suggest an intent on the part of Congress to create separate offenses. Rather, it indicates that Congress deemed it to be immaterial whether the firearm was ultimately acquired. The legislative history contains no discussion of the meaning of the term "acquisition," *id.* at 826, 94 S.Ct. 1262, but it is apparent that Congress decided to add "attempted acquisition" in order to close a potential loophole that might otherwise have been available to defendants such as Brozyna. Congress used both "acquisition" and "attempted acquisition" in order to treat them alike, not differently. This construction of the statute is bolstered by

an alleged error of law. A reversal would not subject Brozyna to a second trial. *See United*

an examination of § 924(a), which provides the penalty for violations of the deceit provisions of the Act. That section does not distinguish between, or even mention, cases where the weapon is acquired and those in which it is not; the penalty is the same in either situation. Thus, even aside from the implications of Rule 31 considered below, the trial court's instruction that the government needn't prove "that she actually acquired or came into possession of the firearm" was consistent with the statute, and the jury's guilty verdict was likewise consistent with the charge and with the proof offered at trial.

■ In order for a variance between an indictment and proof at trial to be fatal to the prosecution, it must "affect the substantial rights" of the accused. *See Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Marin*, 513 F.2d 974, 977 (2d Cir. 1975); *United States v. D'Anna*, 450 F.2d 1201, 1204 (2d Cir. 1971). A variance between an indictment that charges the use of false identification in connection with the acquisition of a firearm and proof at trial that false identification was used in connection with the attempted acquisition of a firearm does not "affect the substantial rights" of the accused because the distinction is unimportant for purposes of the statute.

■ Next we must consider whether the indictment here in question was sufficiently specific to fulfill its traditional purpose. Fed.R.Crim.P. 7(c) requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Although the federal courts long ago abandoned technical and formalized rules of criminal pleading, this degree of specificity in an indictment is still required. The basis for this requirement was explained in *United States v. Silverman*, 430 F.2d 106, 110 (2d Cir.), *modified on other grounds*, 439 F.2d 1198 (2 Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971):

*States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

This requirement performs three constitutionally required functions. It permits the accused "to be informed of the nature and cause of the accusation" as required by the Sixth Amendment. It prevents any person from being "subject for the same offence to be twice put in jeopardy of life or limb" as required by the Fifth Amendment. Finally, it preserves the protection given by the Fifth Amendment from being "held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

Thus, in considering whether the requirement of specificity in the indictment has been met, we must determine whether the indictment fails to perform any of these functions.

■ An indictment performs the first function if it "inform[s] the defendant of the offense charged with sufficient clarity so that he will not be misled while preparing his defense." *Mayer v. Moeykens*, 373 F.Supp. 649, 654 (D.Vt.1973) (Waterman, J.), *aff'd*, 494 F.2d 855 (2d Cir.), *cert. denied*, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974); *see Hallman v. United States*, 93 U.S.App.D.C. 39, 41, 208 F.2d 825, 827 (1953). The indictment informed Brozyna that the government planned to prove that on August 29, 1974, she falsely identified herself as Dorothy Bernys in connection with the acquisition of a firearm. This required Brozyna to prepare to defend not only against that charge but also against whatever necessarily included offenses and attempts she could have been convicted of under Fed.R.Crim.P. 31(c).[4] Her only defense to the false identification count was that the shotgun had not actually been acquired. Even if we accepted the theory that the statute creates separate offenses, under Rule 31 this defense could not have prevented a conviction for using false identification in connection with an attempted acquisition. That offense would be subject to the same penalty under 18 U.S.C. § 924(a) as when the acquisition is complete. If Brozyna was forced into presenting this

"out of the frying pan, into another frying pan" defense, she cannot lay the blame on the indictment. She was made aware by Assistant United States Attorney Cohen, prior to trial, that the government knew that a completed transaction did not occur. *See United States v. D'Anna, supra*, 450 F.2d at 1204. In addition, she was informed prior to summation that the trial judge would charge the jury that it could find an "acquisition" if it found that "she took all the . . . steps necessary to complete the purchase of the firearm as far as she could take it and simply that the sale did not come about because of the action of the store employees." Brozyna was not misled; she simply relied on an erroneous legal theory of criminal pleading.

The instant indictment was also sufficient to perform its second function: that of enabling Brozyna to protect herself from further prosecution for the same offense. *See United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1875). The defect of which Brozyna complains is not of such a nature as to give rise to any confusion regarding the legal and factual basis for the charge. Even if it were true, as the district court held, that the statute creates two separate crimes—one involving acquisition and the other involving attempted acquisition—a prosecution for the one involving acquisition would preclude a later prosecution for the one involving attempted acquisition. *See Brown v. Ohio*, 432 U.S. 161, 165–69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

Finally, it is clear that there has been no violation of Brozyna's right to be tried only on charges presented in an indictment returned by a grand jury. A grand jury that is willing to return a true bill charging a completed act would certainly be willing to indict for an attempt. This is reflected in Rule 31(c), which permits a conviction for attempt even when the indictment charges only the completed act. A material variance based on the accused's grand jury rights occurs only if "the prosecutor has attempted to rely at the trial upon theories and evidence that were not 'fairly embraced

---

4. *See* note 2 *supra*.

in the charges made in the indictment.'" *United States v. Silverman, supra,* 430 F.2d at 110, *quoting Russell v. United States,* 369 U.S. 749, 793, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (Harlan, J., dissenting); *see United States v. Garguilo,* 554 F.2d 59, 63 (2d Cir. 1977). The government's only change in theory—if indeed it can be treated as such—was a change to a theory of attempt, and that theory was fairly embraced in the charges made in the indictment. There was no difference between the facts presented to the grand jury and those proved at trial.

SEVERANCE

■ On her own appeal, Brozyna contends that the trial judge committed reversible error in denying her motion for a severance of the false identification and bail jumping counts of the indictment. She concedes, as she must, that joinder of the two charges was proper under Fed.R.Crim.P. 8(a) and that she "must show substantial prejudice and that the trial judge abused his discretion in refusing to sever." *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). Such a showing is unlikely where "proof at separate trials would largely overlap." *United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir. 1977).

■ In the instant case, proof of Brozyna's bail jumping would have been admissible at a separate trial on the false identification count because evidence of flight is admissible to prove the accused's consciousness of guilt. *See United States v. Malizia,* 503 F.2d 578, 582–83 (2d Cir. 1974), *cert. denied,* 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 843 (1975); *United States v. Ayala,* 307 F.2d 574, 576 (2d Cir. 1962). Similarly, evidence of Brozyna's use of false identification would have been admissible at a separate trial on the bail jumping count because it supplies her motive for bail jumping and tends to prove willfulness. It also discredits her contention that she had been motivated solely by her love for her boyfriend. *Cf. United States v. Egenberg,* 441 F.2d 441, 443–44 (2d Cir.), *cert. denied,* 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971). In view of this overlapping evidence, there was little prejudice in being tried on both counts at the same time. Therefore, we hold that Judge Curtin did not abuse his discretion in deciding to deny the motion to sever.

The judgment of conviction on the bail jumping count is affirmed; the order granting the defendant's motion for a judgment of acquittal on the false identification count is reversed; and the case is remanded with instructions to enter judgment in accordance with the jury verdict and for sentencing thereon.