Perry A. GRANT, Appellant,

v.

UNITED STATES, Appellee.

No. 13087.

District of Columbia Court of Appeals.

Argued March 14, 1979.

Decided May 15, 1979.

T. Paul Imse, Jr., Washington, D.C., appointed by the court, for appellant.

William J. Hardy, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty. and John A. Terry and Michael W. Farrell, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

This is an appeal from convictions by a jury for unauthorized use of a vehicle ("UUV"), D.C.Code 1978 Supp., § 22–2204(a), and violation of the Bail Reform Act ("BRA"), D.C.Code 1973, § 23–1327(a).[1] Appellant Grant contends that (1) the trial

1. Appellant was acquitted on an additional charge of carrying a pistol without a license, D.C.Code 1973, § 22–3204.

court committed reversible error in consolidating the BRA charge with the others for trial, and (2) the evidence was insufficient to support his conviction for unauthorized use. We disagree and thus affirm.

### I.

On January 9, 1977, at 2:30 a. m., the police arrested appellant while he was seated behind the wheel of a 1966 gray Cadillac parked in an alley in the 1300 block of H Street, N.W. Appellant had neither a driver's license nor a registration card. The arresting officer recovered an operable .22 caliber revolver from under the driver's seat and observed pliers and a screwdriver on the floor. Because no keys were found, the police had the car towed to Fifth District Headquarters.

On January 17, appellant posted a $300 cash bond and was released from custody on the condition, among others, that he appear at all scheduled hearings and at trial, and as otherwise required by the court. On March 10, the grand jury indicted appellant for unauthorized use of a motor vehicle and carrying a pistol without a license. Appellant was arraigned on March 17; at that time the court scheduled a status hearing for March 30 and a jury trial for May 4. Appellant remained free on bond. Two weeks later, however, appellant did not appear at the scheduled status hearing. The court ordered his bond forfeited and issued a bench warrant for his arrest. Appellant was arrested one week later.[2]

On June 16, 1977 the grand jury indicted appellant for violation of the Bail Reform Act because of his failure to appear at the March 30 status hearing. On August 18, the government, pursuant to Super.Ct.Cr.R. 13, filed a motion to consolidate the BRA charge with the other pending charges. Over appellant's objection, the court granted the motion on the ground that the BRA charge would "be admissible, anyway, to show consciousness of guilt."

At trial, John McNeil testified that he had seen appellant and another on January 9, 1977, at 12:30 a. m., seated in a gray Cadillac parked in an alley near 14th and H Streets. Mr. McNeil further testified that he later had seen appellant and the other person, Gregory Brown, in Mickey's Bar. McNeil then stated that when he left the bar, Brown had followed him outside and pulled a gun. At that point a police car drove by; Brown dropped his gun and fled. McNeil directed the police to the alley where he had earlier seen Grant and Brown parked. The police arrested appellant there.

Gladys Barnes testified that she had parked her 1966 gray Cadillac in front of her home in Suitland, Maryland at about 9:30 p. m. on January 8, 1977, and had given no one permission to use it. At approximately 7:00 the next morning, she discovered the car missing and immediately telephoned the police. Ms. Barnes also testified that she did not own a pistol or the tools found in the car, and that she had later claimed her Cadillac where the police had impounded it "off Bladensburg Road" (later identified as Fifth District Headquarters).

Appellant testified that Gregory Brown had seen him at a bus stop and offered a ride, then stopped at Mickey's bar, leaving appellant in the car. Brown returned to the car with McNeil, appellant said, but those two began to argue and left appellant alone in the car. The police soon arrived and arrested appellant. He further testified that he had not known the car was not Brown's.

On October 3, 1977, after appellant's motions for judgments of acquittal had been

---

**2.** When the officer who executed the BRA arrest warrant testified, he said that he initially had interviewed appellant at a hospital following a traffic accident, that appellant had said his name was Anthony Geiden, that a book on the front seat of the accident vehicle had had the name Perry Anthony Grant on the cover, that a subsequent check with the Washington Area Law Enforcement System (WALES) had revealed the outstanding warrant for appellant Grant, that the officer later had confronted appellant about giving the false name, and that appellant had not admitted that he was Grant but replied that the officer "had all the answers."

denied, the jury acquitted him of carrying a pistol without a license but found him guilty of unauthorized use of a vehicle and of violating the Bail Reform Act. The court sentenced him to consecutive terms of imprisonment of 8–24 years on the UUV conviction and 1–3 years for the BRA violation.[3]

## II.

Appellant argues that the trial court, over defense objection, improperly consolidated the Bail Reform Act charge with the others for trial. Under Super.Ct.Cr.R. 13, the trial court "may order two or more indictments . . . tried together if the offenses . . . could have been joined in a single indictment . . . ." Such joinder is permitted if, among other reasons, the offenses charged are based on "two or more acts or transactions connected together." D.C.Code 1973, § 23–111(a); Super.Ct.Cr.R. 8(a).

Based on this criterion, at least three United States Circuit Courts of Appeal, applying the identical federal rule, have held that a particular bail jumping charge was "connected" to, and thus joinable with an underlying substantive offense. *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978); *United States v. Brozyna*, 571 F.2d 742, 747 (2d Cir. 1978); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969).[4] In *Ritch*, *supra*, the court stressed that bail jumping is sufficiently "connected" with a substantive offense when "the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges." *Id.* at 1181.

In the present case, appellant was arrested on January 9, 1977 and detained on UUV and related charges; he posted bond and was conditionally released from custody on January 17; he was indicted on March 10; at his arraignment on March 17, he was told to appear at a status hearing two weeks later on March 30. He failed to appear. This sequence of events, closely related in time, evidences a desire to avoid prosecution for the charges underlying appellant's custody and bail; it manifests a "connection" sufficient for consolidating the BRA and other charges. *Ritch, supra; Brozyna, supra; Bourassa, supra.*

This, however, does not end the inquiry. Even though offenses are properly joinable and consolidated for trial under Super.Ct. Cr.R. 8(a) and 13, a defendant may seek severance under Super.Ct.Cr.R. 14 before trial, or at any time during trial, upon a showing that he is "prejudiced" by the joinder. *See* D.C.Code 1973, § 23–313 (identical to Rule 14). In effect, therefore, when a defendant opposes a Rule 13 motion for consolidating trial of separate charges, the inquiries under Rules 8(a) and 14 merge.

■ Our standard of review for the ruling on a consolidation or severance motion is abuse of trial court discretion. *See Fowler v. United States*, D.C.App., 374 A.2d 856 (1977); *Coleman v. United States*, D.C.App., 298 A.2d 40, 42 (1972), *cert. denied*, 413 U.S. 921, 93 S.Ct. 3070, 37 L.Ed.2d 1043 (1973). In order to demonstrate such abuse, an appellant must make a strong showing of prejudice—more than a showing that separate trials would provide a better chance for acquittal. *Ritch, supra* at 1181.

■ In this context, we have stated:
The counts should be severed if it is shown that [1] the jury may cumulate evidence of the separate crimes, or that [2] the jury may improperly infer a crimi-

---

**3.** Appellant's previous felony convictions provided the basis for the government to file informations pursuant to D.C.Code 1973, § 23–111 to increase the punishments beyond the statutory maximums for the offenses charged.

**4.** *Cf. United States v. Quinones*, 516 F.2d 1309, 1312 (1st Cir.), *cert. denied*, 423 U.S. 852, 96

S.Ct. 97, 46 L.Ed.2d 76 (1975) (escape-from-custody charges joinable with related substantive offenses); *United States v. Elliott*, 418 F.2d 219, 221 (9th Cir. 1969) (same); *Bayless v. United States*, 381 F.2d 67, 71–72 (9th Cir. 1967) (same).

nal disposition and treat the inference as evidence of guilt, or where [3] the defendant may become embarrassed or confounded in presenting different defenses to different charges. *Drew v. United States*, 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964). However, where, as in the instant case, evidence of each joined offense would be admissible in a separate trial for the other, the first two dangers are largely absent. [*Coleman, supra* at 42 (latter citations omitted).]

*See generally Tinsley v. United States*, D.C. App., 368 A.2d 531, 533 (1976). These observations are directly in point here. Evidence of the charges (if not all the proof) of unauthorized use of a vehicle and carrying a pistol without a license would be admissible in a separate trial of the BRA charge to show motive for flight and wilfulness. *Brozyna, supra*, at 747. Similarly, evidence of the BRA violation ordinarily would be admissible in a separate trial on the related charges, for evidence of flight from prosecution can be admissible to demonstrate the accused's consciousness of guilt. *Id.; Ritch, supra* at 1181; *Bourassa, supra* at 74; *Hanks v. United States*, 388 F.2d 171, 175 (10th Cir.), *cert. denied*, 393 U.S. 863, 89

S.Ct. 144, 21 L.Ed.2d 131 (1968); *United States v. Accardi*, 342 F.2d 697, 700 (2d Cir. 1965).[5]

To put the matter in perspective, we note that by statute, "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is wilful." D.C.Code 1973, § 23–1327(b). *See Raymond v. United States*, D.C.App., 396 A.2d 975 (1979). In this case, at the pretrial hearing, appellant's counsel merely characterized the failure to appear on March 30 as "a mistake"; he did not proffer specific prejudice warranting severance. For purposes of evaluating consolidation, therefore, the trial court reasonably could have inferred a willful failure to appear, reflecting consciousness of guilt about the other charges.[6] It follows, from this record, that "evidence of each joined offense would be admissible in a separate trial for the other." *Coleman, supra* at 42. The first two dangers from refusal to sever—improper cumulation of evidence and inference of criminal disposition—are therefore obviated. *Id.*[7]

Finally, as to the third danger from joinder, the BRA count and the evidence in support of it were sufficiently simple and

---

5. There may be occasions in which a defense proffer on the BRA charge raises enough doubt as to guilt, or makes a sufficient showing of potential prejudice from joinder, that a trial judge will find it more appropriate to order a separate trial of that charge.

6. Appellant's testimony at trial did not detract from the trial court's ruling. Appellant's excuse for failure to attend the status hearing was simply that he "had lost the slip of paper which tells you when to come back to court." Other developments, too, reinforce the soundness of the court's ruling. The officer who arrested appellant on the BRA charge testified that appellant had given a false name at their initial encounter at the hospital. *See* note 2, *supra*. Appellant then testified that he had been in a coma for three days. The trial court granted a two-hour luncheon recess to permit defense counsel to subpoena hospital records, provided that they be admitted into evidence— whatever they showed. The subpoena, however, never left the Marshal's office. Upon learning this, the trial court proceeded immediately with final arguments and instructions— without defense objection.

7. The jury instructions help to offset the prejudice inherent in joinder. The trial court initially agreed with the prosecutor's request for standard criminal jury instruction 2.44 on flight. *See* Criminal Jury Instructions for the District of Columbia No. 2.44 (3d ed. 1978). Defense counsel pointed out, however, that instruction 2.44 was not literally applicable because it was directed only at flight from the scene of a crime. The court accordingly agreed to modify the instruction to cover "willfully failing to appear for a court appearance." The record on appeal does not contain the trial court's instructions, but we assume from the foregoing colloquy that appellant received the benefit of instruction 2.44, as modified, which contains the following language: "Flight . . . may be motivated by a variety of factors which are fully consistent with innocence." The instruction further cautions that the jury may consider flight as a "one circumstance tending to show feelings of guilt, and you may also consider feelings of guilt as evidence tending to show actual guilt, [but] you are not required to do so. Under no circumstances may you presume a defendant's guilt from his flight or concealment."

distinct from the other charges to avoid embarrassing and confounding appellant "in presenting different defenses to different charges." *Coleman, supra* at 42 (quoting *Drew v. United States,* 118 U.S.App. D.C. 11, 17, 331 F.2d 85, 91 (1964)). *See Ritch, supra* at 1181; *Bourassa, supra* at 74. On the UUV charge, one witness testified that he twice had seen appellant in the driver's seat of the car in the alley; a police officer testified about appellant's arrest in the alley; the owner of the car identified it as recently stolen; and appellant testified that he thought the car belonged to Brown. On the BRA charge, there was evidence that the trial court had ordered appellant to return to court on March 30, 1977, that the District of Columbia Bail Agency had confirmed this with a letter, and that appellant had failed to appear on that date. Appellant testified that he had "lost the slip of paper" and forgotten. The jury, therefore, would have had little difficulty in keeping the uncomplicated evidence on these two charges distinct.[8]

Accordingly, we hold that the trial court did not abuse its discretion in consolidating the Bail Reform Act charge, with the others.

### III.

■ Appellant argues next that the evidence does not support a finding that the automobile in which he was arrested belonged to Ms. Barnes; thus, the jury could not reasonably have found that he used the car "without the consent of the owner." D.C.Code 1978 Supp., § 22–2204(a).[9] He also contends that because no one saw him drive and the vehicle was inoperable at the time of arrest, the jury could not reasonably have found that he unlawfully had "operated or driven" an automobile within

the meaning of the statute. *Id.* Neither point has merit.

When we view the evidence (including circumstantial evidence) in the light most favorable to the government, *See Franey v. United States,* D.C.App., 382 A.2d 1019, 1022–23 (1978); *Reed v. United States,* D.C. App., 312 A.2d 775, 777 (1973), we conclude that the evidence was sufficient for conviction. In the first place, John McNeil had seen appellant seated behind the wheel of a gray Cadillac, parked in a District of Columbia alley, approximately three hours after Gladys Barnes had parked a similar car, later stolen, in front of her Maryland home. Two hours after McNeil had first seen appellant, the police arrested him in a car of the same description in the same alley, seated once again behind the wheel. The car in which he was arrested was towed to Fifth District Headquarters, where Ms. Barnes identified her automobile of the same description. This evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that appellant had been arrested while in Ms. Barnes' automobile. *Waterstaat v. United States,* D.C.App., 252 A.2d 507, 508 (1969); *see Reed, supra* at 777.

■ It is clear, second, that someone had moved the automobile between the time when Ms. Barnes parked it in front of her home and the time it was observed in the alley. The fact that appellant was twice seen in the driver's seat of the recently stolen automobile is sufficient evidence for a reasonable juror to conclude beyond reasonable doubt that appellant had been the one who operated or drove it. *See Fleming v. United States,* D.C.App., 310 A.2d 214, 216–18 (1973); *United States v. Weston,* 151

---

**8.** The jury demonstrated its ability to deal separately with each charge by acquitting appellant on the charge of carrying a pistol without a license. *See* note 1, *supra.*

**9.** D.C.Code 1978 Supp., § 22–2204(a) provides:
Any person who, without the consent of the owner shall take, use, operate, or remove or cause to be taken, used, operated, or removed, from a garage, stable, or other build-

ing, or from any place or locality on a public or private highway, park, parkway, street, lot, field, enclosure, or space, [an automobile] or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use, or purpose shall be punished by a fine not exceeding $1,000 or imprisonment not exceeding five years, or both such fine and imprisonment.

U.S.App.D.C. 264, 266–67, 466 F.2d 435, 437 (1972).[10]

*Affirmed.*

---

10. Appellant's claim that the vehicle must be operable at the time of arrest is meritless. As long as the jury reasonably can infer that appellant drove the car to the alley, it is irrelevant that the vehicle was inoperable at the time of arrest. *Cf. Taylor v. United States,* D.C.App., 259 A.2d 835 (1969) (Appellant found in a wrecked automobile was validly arrested for operating a motor vehicle without an operator's permit since the inoperable condition did not negate the inference that appellant had been driving the car).