Joseph WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

No. 13256.

District of Columbia Court of Appeals.

Argued En Banc Jan. 18, 1980.

Decided Sept. 18, 1980.

Joseph J. Trepel, Washington, D. C., appointed by this court, for appellant.

Michael W. Farrell, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Steven D. Gordon and Jerry D. Bernstein, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

KERN, Associate Judge:

In October 1976, appellant followed a fellow passenger, after they had both alighted from a bus, and stabbed him with a knife. Appellant was arrested a few days later and released to a third party on personal recognizance. Subsequently, he failed to appear in the trial court either for his preliminary hearing or for arraignment. In December 1976, the grand jury indicted appellant for assault with a dangerous weapon (ADW), D. C. Code 1973, § 22–502, and violation of the District of Columbia bail laws, D. C. Code 1973, § 23–1327(a). He was arrested in New York about one year later on an outstanding warrant and was returned for further proceedings.

In November 1977, appellant's motion to sever these two charges was heard and denied by the trial court and his trial was set for January 11, 1978. At this hearing, the court inquired about "any possibility of disposition." The prosecutor responded that he "would be happy to negotiate a disposition," that he was "certainly willing to consider a plea offer," and that the defense attorney's "offer this morning was to plead to the bail charge in return for dropping the ADW count. My problem with that is that the complaining witness was in critical condition in the hospital and ran up $2,200.00 worth of medical bills, and I can't see dropping a charge like that." (Supp. Record at 6–7.)

On the day of trial, the prosecutor requested a continuance in order that a new indictment might be returned. This indictment charged appellant not only with the assault and bail-jumping counts contained in the 1976 indictment but also with two new counts: assault with intent to kill (AWIK), D. C. Code 1973, § 22–501, and assault with intent to kill while armed (AWIKWA), D. C. Code 1973, §§ 22–501, 22–3202. In February 1978, at his trial, the government dismissed the ADW count. The jury convicted appellant of the bail charge and AWIKWA, after the court had instructed them that they could convict appellant of AWIK, a lesser-included offense of AWIKWA.

Appellant challenges his conviction on two grounds: (1) that the court erred in failing to sever the bail charge from the remaining charges and the joinder of these two offenses at trial prejudiced him; and (2) that his reindictment in January 1978 with the addition of two counts to the two counts contained in his original indictment was the result of prosecutorial vindictiveness which the Supreme Court has deemed violative of due process. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). A division of this court rejected appellant's "severance" argument but agreed with his "vindictive prosecutor" contention and remanded the case for the purpose of permitting the government to show on the record its reason for reindicting appellant.

The court sitting en banc rejects appellant's contention that the joinder of the bail charge with the other charges arising out of his stabbing the complainant constituted prejudicial error, and approves the reasoning on this point contained in the opinion of the division, now vacated. The division pointed out that a showing by appellant of real and demonstrative prejudice is necessary to warrant reversal for failure to sever the assault charges from the bail charge. In this case, the knowledge of the bail charge would not be withheld from the jury even in a separate trial of these offenses. *Grant v. United States*, D.C.App., 402 A.2d 405 (1979). Therefore, as the division concluded, appellant failed to show clear prejudice resulting from the joinder and the trial court's refusal to sever was not error.

We also reject appellant's contention that the reindictment, under the circumstances, constituted a realistic likelihood of prosecutorial vindictiveness so as to require a remand for a satisfactory explanation by the government. Appellant argues that his case falls within the ambit of *Blackledge, supra*, because of two occurrences prior to his trial: (1) the prosecutor's statement at the pretrial hearing in November 1977 that he could *not* accept defense counsel's offer to a plea to the bail count

and drop the ADW charge; and (2) the prosecutor's "last minute" request in January 1978 for postponement of the trial to obtain a reindictment, with the addition of the more serious charges of AWIK and AWIKWA to the original ADW and bail charges. In appellant's view, these events demonstrated that "the prosecutor decided that since he had not obtained a plea to the charge he would return to the grand jury and obtain a more severe charge. The reindictment at literally the last minute before trial imparts the appearance of vindictiveness." (Reply Brief at 9.)

The Supreme Court cases dealing with vindictive prosecution have recognized two distinct situations in which the appearance of vindictiveness may require an inquiry and judicial intervention. The first is where the prosecutive decision is based on discriminatory grounds of race, religion, national origin, or other impermissible classification. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364–65, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978). The other situation is where the accused is treated more harshly on retrial because he has exercised a conferred right to that new trial as in *Blackledge v. Perry, supra,* or *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See Bordenkircher v. Hayes, supra,* 434 U.S. at 362–63, 98 S.Ct. at 667.*

This case does not fall within either category. First, there is no assertion that the reindictment was sought because of any improper consideration such as appellant's race or religion. Second, the record contains nothing to indicate that the prosecutor was in any way treating appellant more harshly for the assertion of a right recognized in *Blackledge* and *Pearce.* Rather, the prosecutor, upon evaluating the case after an indictment had been returned and appellant's fugitivity had ended but before the trial commenced, realized that it involved a far more severe offense than was

reflected in the original indictment. Such a reevaluation of the severity of the offense (and the original indictment) cannot rise to the level of vindictive prosecution so as to violate due process. The fact that, coincidentally with the prosecutor's process of reevaluation of the case, appellant in the instant case had offered to plead to the bail-jumping charge in exchange for the prosecutor dropping the assault charge and the prosecutor's rejection of the offer is, on this record, insufficient to invoke the doctrine of vindictive prosecution.

■ In addition, we do not read the holding in *Bordenkircher* as requiring that a prosecutor must always present to the defendant, on the record, the alternative of either entering an acceptable guilty plea or facing the consequences of enhanced charges. While that occurred in *Bordenkircher,* the Court did not require that such plea bargaining procedures must be spread on the record so that the prosecution disclose its price, if any, for the defendant's refusal to enter an acceptable guilty plea.

Thus, we conclude that none of the Supreme Court cases dealing with vindictive prosecution requires reversal or remand here. Nor are we persuaded to create a third category of cases requiring such action on these facts.

*Affirmed.*

FERREN, Associate Judge, with whom NEWMAN, Chief Judge, joins concurring:

I join in Judge KERN's opinion, although I believe it is important to clarify and emphasize the "two distinct situations in which the appearance of vindictiveness may require an inquiry and judicial intervention." *Ante* at 396. I agree that the first situation "is where the prosecutive decision is based on discriminatory grounds of race, religion, national origin, or other impermissible classification." *Ante* at 396. The

---

* In *Wynn v. United States,* D.C.App., 386 A.2d 695, 698 (1978), this court found on the record "a manifestation of vindictiveness" requiring vacation of a part of the judgment of conviction where the prosecution, prior to trial, added

additional charges after such a series of delays as to have provoked the trial court into dismissing (without prejudice) for want of prosecution the original information.

second category, however, is not limited to situations in which the accused has been brought to trial for a second time.** The filing of additional criminal charges before the first trial, in some circumstances, may manifest sufficient vindictiveness to warrant judicial intervention. *See Wynn v. United States,* D.C.App., 386 A.2d 695 (1978) (government's filing of additional charges after nonprejudicial dismissal of first information for want of prosecution manifested vindictiveness warranting vacation of convictions on the additional charges). On this record, however, I do not see sufficient indication of vindictiveness to warrant remand to the trial court.

KELLY, Associate Judge, with whom MACK, Associate Judge, joins concurring in part and dissenting in part:

Appellant was presented before the court on October 4, 1976, the day of his arrest for assault, and was released on personal bond. A preliminary hearing was set for October 19, 1976. Appellant failed to appear for his preliminary hearing and a bench warrant was issued for his arrest. Shortly thereafter, the grand jury indicted appellant for assault with a dangerous weapon, D. C. Code 1973, §§ 22–502, and bail jumping, D. C. Code 1973, § 23–1327.

Appellant was arrested in New York about one year later and was returned to the jurisdiction to await trial on the above-mentioned indictment. On November 3, 1977, a hearing was held at which appellant's motion for severance of the two charges was heard and denied. At that hearing, the court asked whether there was any chance that the case would end in a bargained plea. On that subject, the following discussion took place:

THE COURT: Is there any possibility of disposition [defense counsel]?

** According to the opinion for the court: "The other situation is where the accused is treated more harshly on *retrial* because he has exercised a conferred right to that *new trial* as in *Blackledge v. Perry, supra* [417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)], or *North Carolina v. Pearce,* 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656] (1969). *See Bordenkircher v.*

DEFENSE COUNSEL: Your Honor, I suggested to the United States Attorney this morning what we would do, and he has refused that. We have tried to negotiate with him.

GOVERNMENT COUNSEL: Well, Your Honor, I would be happy to negotiate a disposition [Defense Counsel's] offer this morning was to plead to the BRA in return for dropping the ADW count. My problem with that is that the complaining witness was in critical condition in the hospital and ran up $2,200.00 worth of medical bills, and I can't see dropping a charge like that. I'm certainly willing to consider a plea offer—

THE COURT: Well, is there still a possibility?

DEFENSE COUNSEL: Yes, there is still a possibility.

THE COURT: Let's say yes with a question mark. . . .

Trial was then set for January 11, 1978.

On the day of trial, the government requested and received a continuance. Later that day a new indictment was returned charging appellant with the original two counts as well as an assault with intent to kill, D. C. Code 1973, § 22–501, and an assault with intent to kill while armed, D. C. Code 1973, §§ 22–501, 22–3203 (the charge on which he was ultimately convicted). Appellant pleaded not guilty to all charges. There is no indication in the record that any plea bargaining sessions occurred between the time of the filing of the superseding indictment and trial.

At trial on February 13, 1978, the government was allowed to dismiss the assault with intent to kill charge. Appellant's motion for a judgment of acquittal based on abuse of the grand jury system was heard twice and denied both times.[1]

*Hayes, supra* [434 U.S.] at 362–63 [98 S.Ct. at 667]." *Ante* at 396 (footnote omitted) (emphasis added).

1. Counsel for appellant summarized his position on the government's use of a superseding indictment, saying:

It is just suspect to me in regard—I don't believe it is legal. I don't believe it complies

Appellant contends that his indictment should be dismissed as it was motivated by prosecutorial vindictiveness. Put another way, appellant alleges an abuse of prosecutorial discretion. Because a similar claim has only recently been addressed by the Supreme Court, a historical analysis of the issue is useful.

In 1969, in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court considered the issue of vindictiveness in the criminal justice system. There, appellant Pearce argued successfully that due to vindictiveness the trial court had sentenced him more harshly, after a successful appeal and reconviction. The Court stated that "imposition of a penalty upon defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law." *Id.* at 724, 89 S.Ct. at 2080, quoted in *Blackledge v. Perry*, 417 U.S. 21, 25, 94 S.Ct. 2098, 2101, 40 L.Ed.2d 628 (1974). The Court noted that while a harsher sentence on reconviction is not per se violative of constitutional rights, absent certain findings on the record that would justify the harsher sentence, it could not stand.[2]

In *Blackledge v. Perry, supra*, the Court once again addressed the question of harsher sentence imposed on retrial. In that case, however, the opportunity for harsher sentence came not from the bench, but rather from the actions of the prosecutor.

There, Perry was found guilty in the District Court Division of the North Carolina General Court of Justice of assault with a deadly weapon, a misdemeanor. He exercised his right, under North Carolina law, to a trial *de novo* in Superior Court. While Perry awaited trial, he was reindicted[3] for assault with a deadly weapon with the intent to kill and inflict serious bodily injury, a felony. The second indictment was based on the same facts as was the first. On a writ of habeas corpus, Perry alleged that the indictment for the more serious felony charge was in retaliation for his seeking *de novo* review of his original misdemeanor conviction. The Supreme Court agreed, noting:

A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. . . .

Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. . . . [*Id.* at 28, 94 S.Ct. at 2102 (citations omitted).]

These cases stand clearly for the proposition that an individual cannot be coerced into foregoing his constitutional rights for fear that he may suffer a harsher penalty should he pursue those rights. Two ele-

with the constitutional rights of the defendant, and I renew my motion at this time based on the way this case was indicted. . . .

2. Two cases followed which applied *Pearce*. *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), presented the issue of the propriety of subjecting a defendant to a more severe sentence after a trial *de novo* on the same charges on which he had been tried earlier. The Court held that since the second judge had not been the judge in the original trial, there was no likelihood of vindictiveness and thus affirmed the conviction and sentence. In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the defendant received a second trial after successfully appealing his original conviction. As was the case in *Pearce* and *Colten*, the defendant in *Chaffin* was reconvicted and sentenced to a

term greater than that to which he was sentenced after his original conviction. The Court sustained this action, holding that since sentencing in that jurisdiction was the responsibility of the jury and not the judge, and since the jury hearing the second trial had not heard the first trial, the second sentence could not have been motivated by vindictiveness.

3. In North Carolina, any defendant who is convicted of a crime in the District Court has a right to a trial *de novo* in the Superior Court. No error need be alleged. "When an appeal [for a trial *de novo*] is taken, . . . the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in the Superior Court." *Blackledge v. Perry, supra*, 417 U.S. at 22, 94 S.Ct. at 2100. Reindictment, therefore, is a matter of course.

ments stand out: pursuit of a right and retaliation and vindictiveness by the state.

Recently, in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court applied this rule of law to plea bargaining. In that case, Hayes was originally charged with uttering a forged instrument in the amount of $88.30. During plea negotiations, the prosecutor offered Hayes a bargain and made it clear that should Hayes decline his offer, he would return to the grand jury and seek an indictment under the Kentucky Habitual Offenders Act, thereby presenting Hayes with the prospect of mandatory life imprisonment upon a determination of guilt. Hayes declined the offer, was reindicted, found guilty, and sentenced to life imprisonment. In a habeas corpus action, Hayes' conviction was affirmed. After citing *Pearce* for the proposition that "[t]o punish a person because he had done what the law plainly allows him to do is a due process violation of the most basic sort," *id.* at 363, 98 S.Ct. at 668, the Court concluded that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.*

The Court's decision in *Bordenkircher* is that no defendant is forced to forego a constitutional right if he had the alternative to accept or reject a bargain. In short, the majority based its holding on the utility of the plea bargaining system and the ability of the prosecutor to facilitate that system by "upping the ante." *See Blackledge v. Perry, supra,* 417 U.S. at 28, 94 S.Ct. at 2102. The analysis becomes clear when one notes the majority's characterization of this situation as no different than if the prosecutor had indicted Hayes as a repeat offender in the first instance.

Were one to afford the seemingly talismanic effect given by the *Bordenkircher* Court to the plea bargaining process, that would end our inquiry. In my judgment, however, such a broad reading of *Bordenkircher* would be incorrect. The Court there stated that "[t]his is not a situation, therefore, where the prosecutor *without no-*

*tice* brought an additional and more serious charge *after* plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." *Id.,* 434 U.S. at 360, 98 S.Ct. at 666 (emphasis added). The present case, however, presents such a situation.

The decisions in both *Pearce* and *Blackledge* imply that the rules of law stated therein are not merely prophylactic vis-á-vis retaliatory actions by the state. Rather those rules serve to protect constitutional rights which are the subject of those retaliations. *Bordenkircher* teaches that it does not unjustly interfere with the right to proceed to trial to present a defendant with the alternatives of pleading guilty to a charge or being reindicted with a charge more serious than that contained in the original indictment. What then of the situation in which reindictment is used neither to facilitate plea bargaining nor cause the defendant to forego constitutional rights? That is the question left unanswered in *Bordenkircher* and that is the situation with which we are faced here.

Given that the opinion in *Bordenkircher,* by its own terms has no impact on the facts of this case, I would turn to the earlier pronouncements and conclude that, absent a showing on the record by the government of justification for the superseding indictment, appellant's conviction for assault with intent to kill while armed should be vacated and the charge dismissed.

The thread of consistency which runs through these opinions is deprivation of a right caused by apprehension of retaliation. *See Blackledge v. Perry, supra,* at 28, 94 S.Ct. at 2102; *North Carolina v. Pearce, supra,* 395 U.S. at 725–26, 89 S.Ct. 2080–81. *Bordenkircher* stands as an exception to that general rule, applicable to situations where the prosecutor uses the possibility, or fact, of reindictment as leverage to avoid trial. Where, as here, there is no "give-and-take," no opportunity to accept or reject the government's deal after notice of impending or accomplished reindictment, the *Bordenkircher* exception does not apply,

leaving us with the general rule.[4] I respectfully note, and apply to this situation, Justice Blackmun's statement in strong dissent that

> Prosecutorial vindictiveness, it seems to me, in the present narrow context, is the fact against which the Due Process Clause ought to protect. I perceive little difference between vindictiveness after what the Court describes, *ante*, p. 362 [98 S.Ct., p. 667] as the exercise of a "legal right to attack his original conviction," and vindictiveness in the "give-and-take negotiation common in plea bargaining." Prosecutorial vindictiveness in any context is still prosecutorial vindictiveness. The Due Process Clause should protect an accused against it, however it asserts it-self. [*Bordenkircher v. Hayes, supra,* 434 U.S. at 367–68, 98 S.Ct. at 670 (Blackmun, J., dissenting).]

It is my judgment that where in the face of unsuccessful plea negotiations the government seeks and obtains a new indictment presenting the defendant with a more severe burden, doing so without notice to the defendant and without subsequently engaging in good faith plea bargaining creates a strong inference of vindictiveness on the part of the prosecutor. *See United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974) (on a record "devoid of any illuminations of the reasons" for reindictment after mistrial for a more serious offense, conviction overturned).[5]

**4.** It must be emphasized that in returning to the general rule of *Pearce* and *Perry,* I do so by noting that *Bordenkircher* announces a narrow rule: that the right to plead "not guilty" is not impeded by threats of reindictment. Surely, if a prosecutor threatened a defendant with bodily injury, that would be impermissible. The court, however, draws an implicit distinction between threats of certain incarceration and physical injury. The corollary to the narrow rule, therefore, is that the right to plead "not guilty" is a right protectable against all interests except the prosecutor's interest in facilitating plea bargaining in a reasonable manner. Our situation is governed by the general rule (*i. e.,* the corollary).

Incentive must be distinguished from punishment. The record before us does not imply a situation in which the prosecutor attempts to persuade the defendant or facilitate the process of plea bargaining. Rather, here we seem to have an instance of punishment; the prosecutor did not receive the cooperation that he had hoped for and responded in a retaliatory manner. The prosecutor's right to revenge is not an interest to which the defendant's right to plead "not guilty" must give way.

**5.** In a footnote in his dissent in *Bordenkircher, supra* Justice Blackmun presented his reasons why, in this area, there should be some checks on prosecutorial discretion. Those reasons bear repeating here:

> Even if overcharging is to be sanctioned, there are strong reasons of fairness why the charges should be presented at the beginning of the bargaining process, rather than as a filliped threat at the end. First, it means that a prosecutor is required to reach a charging decision without any knowledge of the particular defendant's willingness to plead guilty; hence the defendant who truly believes himself to be innocent, and wishes for that reason to go to trial, is not likely to be subject to quite such a devastating gamble since the prosecutor has fixed the incentive for the average case.
>
> Second, it is healthful to keep charging practices visible to the general public, so that political bodies can judge whether the policy being followed is a fair one. Visibility is enhanced if the prosecutor is required to lay his cards on the table with an indictment of public record at the beginning of the bargaining process, rather than making use of unrecorded verbal warnings of more serious indictments yet to come.
>
> Finally, I would question whether it is fair to pressure defendants to plead guilty by threat of reindictment on an enhanced charge for the same conduct when the defendant has no way of knowing whether the prosecutor would indeed to be entitled to bring him to trial on the enhanced charge.... [*Id.,* 434 U.S. at 368–69 n.2, 98 S.Ct. at 670–671 n.2.]

This is not an issue of first impression in this court. In *Wynn v. United States,* D.C.App., 386 A.2d 695 (1978), we vacated a conviction where the charge on which the appellant had been convicted was added after appellant had successfully obtained a dismissal of the original information, without prejudice, for want of prosecution. *See* discussion *infra.*

In *Harvey v. United States,* D.C.App., 395 A.2d 92, *cert. denied,* 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979), this court addressed a situation in which the prosecutor presented the defendant with the option of either pleading guilty to the counts in the indictment or face trial on those counts as well as another, more severe charge and life papers. Although we noted that the decision in *Bordenkircher* mandated an affirmance, we stated, over dissent, our clear preference for the practice of "bring[ing] all the charges in the original

For an appropriate remedy in this case, I look to three previous decisions, two of which are from this jurisdiction. In *United States v. Jamison, supra,* the United States Court of Appeals for the District of Columbia Circuit reversed a conviction for an added count with instructions that the appellant be retried for the original count. In that case, appellant had, at trial, objected to his reindictment on a more serious charge after the declaration of a mistrial. Since the record contained no justification for the reindictment, the court concluded there had been a denial of due process. *Id.* at 310, 505 F.2d at 417. Similarly, the United States Court of Appeals for the Ninth Circuit, in *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976), reversed appellant's conviction with instructions that the indictment be dismissed. There, appellant had objected at trial that his second indictment on felony charges had been motivated by his refusal to waive his right to be tried in the District Court by a jury on his original misdemeanor charge. The court there noted that on the record, the prosecution had failed to meet the "heavy burden of proving that any increase in the severity of the alleged charges was not motivated by a vindictive motive." *Id.* at 1369 (footnote omitted). Finally, this court vacated convictions on charges added after the original information was dismissed without prejudice in *Wynn v. United States,* D.C.App., 386 A.2d 695 (1978). We there noted that "[t]he setting lent itself to be viewed as a manifestation of vindictiveness," *id.* at 698, and held that since the government offered no justification for its action and did not request a remand to provide for an opportu-

nity to do so, *id.* at 698 & n.10, the appropriate remedy was vacation of the conviction.[6]

The present case presents a different situation. No allegation of prosecutorial vindictiveness was made at trial. Appellant did maintain that the reindictment was an abuse of the grand jury system, but that contention was insufficient to put the government on notice that it must therefore justify its action in reindicting appellant. In my judgment, the appropriate disposition of this case is a "remand for a hearing at which the prosecution is given an opportunity to satisfy its burden of showing that vindictiveness did not motivate it to bring the additional charges against appellant the second time around." *Id.* at 699 (Yeagley, J., concurring in part and dissenting in part). At that hearing, the government would be faced with a strong presumption against it.

I concur in the majority's disposition of the severance issue; otherwise, I dissent.

MACK, Associate Judge, with whom KELLY, Associate Judge joins concurring in part and dissenting in part:

I concur fully in the statement of Judge Kelly.

Reduced to bare essentials the facts here are that appellant (on a record devoid of a *Bordenkircher* prosecutorial notice of reindictment[1]) elected to go to trial (exercising a constitutional right) and that the government, on the day of trial, obtained a continuance and reindicted so as to "up the ante." These facts form the foundation for the "realistic likelihood of vindictiveness" condemned in the *Blackledge-Pearce*[2] line of

---

indictment unless there are compelling reasons for bringing the new or additional charges, e. g., newly discovered evidence." *Harvey v. United States, supra* at 98. I, as should the court, adhere to that preference.

**6.** In *Wynn v. United States, supra,* we agreed with and adopted the following language announced by the Ninth Circuit:

We need not find that the prosecutor acted in bad faith or that he maliciously sought the marijuana indictment. The core of the *Blackledge, Pearce* and *Ruesga-Martinez* decisions is that it is the appearance of vindictiveness, rather than vindictiveness in fact,

which controls. [*United States v. Groves,* 571 F.2d 450, 453 (9th Cir. 1978).]

**1.** *See Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

**2.** *See Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

These decisions are based upon the *possibility* that a defendant *might* be the victim of vindictiveness and the requirement that a defendant be freed of the *apprehension* of such retaliatory motivation.

cases. *See United States v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (1974). As I read these cases further, once the appearance of vindictiveness has surfaced under these circumstances, it is the prosecutor who has the burden of negating vindictiveness—a burden which, in the instant case, the government would have the opportunity *to attempt to meet on the remand for a hearing* that Judge Kelly would offer. Yet, it is the majority of the court here that has exercised the prerogative of the prosecutor. Having solemnly pronounced that "the record contains nothing to indicate that the prosecutor was in any way treating appellant more harshly for the assertion of a right recognized in *Blackledge* and *Pearce*,[3] the majority proceeds further to conclude that the added penalty was justifiable because of the prosecutor's reevaluation of the severity of the offense. Even if it were true that the prosecutor could reevaluate (which he could not do in the absence of intervening events, or new evidence of which the government was unaware at the time of the first indictment, *see Jamison, supra* at 310, 505 F.2d at 417), it is the government, not this appellate court, which is charged with making the showing.[4]

Moreover, the need for a remand is highlighted by the majority's somewhat obscure reference to the holding in *Bordenkircher*. I cannot determine whether the majority finds that narrow decision controlling, or merely somewhat controlling; in any event, I think it is stretching things a bit to suggest that a prosecutor, in order to immunize enhanced charges from the appearance of vindictiveness under *Bordenkircher*, is not required to have made a public record of the plea bargain threat. Thus, as the majority concedes, the Supreme Court observed that the prosecutor in *Bordenkircher*

clearly set forth at the outset of the plea bargaining negotiations his intent to reindict in the event of an election to go to trial. *Id.* at 360, 98 S.Ct. at 666. The Court further observed:

> This is not a situation, therefore, where the prosecutor *without notice* brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty. [*Id.* (footnote omitted; emphasis added).]

If there is room for further doubt, I would add that the basic rationale underlying the *Bordenkircher* opinion is the importance of a public record in plea negotiations.

In the instant case, on the remand that Judge Kelly suggests, the government would have the opportunity to present evidence in an attempt to bring this case under *Bordenkircher*. The dissent is not suggesting that this court "create ... a new category of cases" but merely that we apply existing law on the basis of sufficient facts developed in the proper forum. That is what remands are for.

---

3. Our circuit court in *Jamison, supra*, 164 U.S. App.D.C. at 310, 505 F.2d at 417, used very similar language in reaching the opposite result:

> Since this record is devoid of any illumination of the reasons why the first degree murder charge was brought, we can only conclude that the reindictment of appellants for first degree murder [after mistrial on an earlier indictment for second degree murder] denied them due process and that their convictions of that charge cannot stand.

4. *See Pearce, supra*, 395 U.S. at 726, 89 S.Ct. at 2081:

> [T]he factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy ... may be fully reviewed on appeal.