Kenneth GRAY, Appellant,

v.

UNITED STATES, Appellee.

No. 90–553.

District of Columbia Court of Appeals.

Submitted Sept. 16, 1991.
Decided Sept. 24, 1991 *.

* The decision in this case was originally released as a Memorandum Opinion and Judgment on September 24, 1991. It is now being published by direction of the court.

Denise D. Green, appointed by the court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Thomas J. Tourish, Jr., and John F. Cox, III, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and WAGNER, Associate Judges, and NEWMAN, Senior Judge.

FERREN, Associate Judge:

A jury convicted appellant Gray of unlawful distribution of a controlled substance, D.C.Code § 33–541(a)(1) (1988 Repl. and 1991 Suppl.), and violation of the Bail Reform Act, *id.* § 23–1327 (1989). Appellant contends that (1) the trial court's admission of expert testimony as to what constitutes a "usable amount" of controlled substance was manifestly erroneous and unduly prejudicial; (2) the government failed to produce sufficient evidence that the quantity of cocaine sold was a usable amount; and (3) the instructions on usable amount did not adequately inform the jury about an essential element of unlawful distribution. We affirm.

## I.

■ In challenging the government's expert, Officer Sinclair, appellant argues that (1) the trial court erred in allowing Sinclair to testify about narcotics usage without first determining that Sinclair had sufficient education, experience, or expertise to do so; (2) Sinclair failed to state any factual basis for his opinion that the cocaine was a usable amount; and (3) Sinclair erroneously defined "usable amount."

■ The trial court has broad discretion to admit or exclude expert testimony; we will disturb the trial court's ruling on appeal only if the ruling is "clearly erroneous." *Jones v. United States*, 548 A.2d 35, 38 (D.C.1988). Officer Sinclair testified that he had eleven years of experience in the Narcotics Branch of the Metropolitan Police Department. During those eleven years he investigated several hundred narcotics cases. He attended many different law enforcement schools and training programs on drug trafficking and drug enforcement. He has been qualified as an expert on the sale and distribution of narcotics in the District of Columbia in numerous prior court proceedings. Given this record, we cannot say that the trial court abused its discretion in finding Sinclair qualified to testify as an expert on narcotics usage.

■ Nor did Officer Sinclair fail to state a factual basis for his opinion that the cocaine was a usable amount. He testified that the cocaine had been offered for sale in a quantity and in packaging consistent with the usual sale of drugs on the streets of the District of Columbia. He explained that the term "dime cocaine" refers to a specific quantity of the drug generally offered for sale at a price of $10.00. The cocaine at issue in this case was analyzed and measured to contain .278 grams of cocaine hydrochloride. These were sufficient factual bases for Officer Sinclair's expert opinion that the cocaine seized was a usable amount. *See Wishop v. United States*, 531 A.2d 1005, 1008–1009 (D.C. 1987).

■ Appellant also contends that Officer Sinclair's definition of "usable amount" reflected an erroneous interpretation of the law—a contention which, if true, would call into question his expert opinion that the cocaine satisfied the legal requirement of usability.

The following exchange occurred on cross-examination:

DEFENSE COUNSEL: You spoke also, Officer, of a usable amount. What is a usable amount?

OFFICER SINCLAIR: A usable amount is any amount of the drug that can be ingested into the system through its normal use. For an example, cocaine, any amount of cocaine that can be absorbed or taken into the body is a usable amount of that drug.

DEFENSE COUNSEL: And so, when you're talking about usable amount, you're talking then about any amount that can be physically taken into the body without regard to any effect that it produces, is that right?

OFFICER SINCLAIR: That's correct.

We consider this testimony against the background of Officer Sinclair's other testimony concerning the amount of cocaine seized, its packaging, and the method of its acquisition consistent with street sale. We conclude that Sinclair's definition, while perhaps not as precise or thorough as one might desire, was adequate on this record to support his expert opinion that the cocaine seized was a usable amount.

In *Edelin v. United States*, 227 A.2d 395 (D.C.1967), this court held that the government must prove the defendant possessed a "usable" quantity of narcotics:

If this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society....

*Edelin*, 227 A.2d at 398–99. *Edelin* goes no further than to recognize that the common sense application of the narcotics laws does not reach a seized amount "so inconsiderable as to make it of no utility to a user, and unmarketable...." *Wishop*, 531 A.2d at 1008; *see Blakeney v. United States*, 366 A.2d 447, 449 (D.C.1976). There was extensive evidence that the cocaine at issue in this case was marketable and of sufficient quantity to be of some utility to a user.

We believe Officer Sinclair's definition was intended not as a legal definition of the term "usable amount" but rather as a way of distinguishing, on a factual level, the amount of cocaine seized in this case from a trace amount or from residue on drug paraphernalia, *see Singley v. United States*, 533 A.2d 245, 247 (D.C.1987), which would not constitute a "narcotic as contemplated by Congress to be a danger to society." *Edelin*, 227 A.2d at 399. This explains his qualification that he referred to a quantity that could be taken into the body "through its normal use." We conclude that Officer Sinclair's definition was adequate.

## II.

Appellant next contends the trial court erred in refusing to grant his motion for a judgment of acquittal. He argues that the government produced no legally sufficient evidence to establish that he distributed a usable amount of a controlled substance. We disagree. As in this case, usability can be established in many ways. First, if the quantity of a drug is measurable, it is evidence of a usable amount. *See Wishop*, 531 A.2d at 1008. Without question, there was a measurable quantity of cocaine sold to the undercover officer in this case. Second, expert testimony, such as the opinion of Officer Sinclair, can establish usability. *See id.* at 1008 n. 6; *see also Hawkins v. United States*, 482 A.2d 1230, 1232–33 (D.C.1984) (police detective's expert testimony, even though ambiguous, was sufficient to establish usability). Finally, circumstantial evidence that drugs are offered for sale in quantities and packaging consistent with distribution can be used to demonstrate that a usable amount was sold. *See Bernard v. United States*, 575 A.2d 1191, 1195 (D.C.1990). The government used all of these means to establish that appellant had distributed a usable amount. Our decision in *Singley* should not be interpreted to impose a requirement of proof of narcotic effect in cases where the quantity of the controlled substance is measurable and there is other evidence of its usability. *See Judge v. United States*, 599 A.2d 417 (1991). Examining the evidence in this case, as we must, in the light most favorable to the government, *see Jones*, 548 A.2d at 48, we conclude that appellant was not entitled to a judgment of acquittal.

### III.

Appellant contends, finally, that the trial court failed to make clear in its instructions to the jury that the government must prove the defendant sold a usable amount of cocaine to the undercover officer. At trial, defense counsel proposed an expanded instruction on usable amount, one which included "narcotic effect upon the user" as a necessary element of usability. The government objected and proposed the standard "Redbook" instruction, which focuses on measurability as the focal point of usability. Criminal Jury Instructions for the District of Columbia (3d ed. 1978), Instruction 4.32. The trial court drafted its own instruction, which it proposed to counsel as follows:

> Usable means an amount that is marketable to a seller and would be of utility to a user. If the amount of cocaine is measurable, the jury may infer that the amount is usable. However, they are not required to make that inference. They must be satisfied beyond a reasonable doubt that the defendant or someone whom he aided and abetted transferred or attempted to transfer some usable amount of cocaine.

After extensive discussion, defense counsel told the court: "Without withdrawing my request for the instruction which I proffered to the Court, it would be my request that rather than give any instruction at this point that the Court give no instruction." Judge Dixon then instructed the jury:

> In order to establish the first essential element of this offense, the Government must prove beyond a reasonable doubt that the defendant transferred or attempted to transfer some usable amount of cocaine.

This is not a situation in which the trial court failed to instruct on an essential element of the crime charged. *Compare Kind v. United States*, 529 A.2d 294 (D.C.1987) (failure to instruct on length of knife blade plain error because knife length part of statutory definition of offense charged). The court did instruct the jury that usable amount was an essential element of the crime. The court's failure to expand upon the definition of usable amount was in direct response to defense counsel's request that it refrain from doing so. On these facts, appellant is bound by the position his counsel maintained at trial. *See Mitchell v. United States*, 569 A.2d 177, ·180, *cert. denied,* —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 532 (D.C.1990). Appellant cannot fairly allege trial court error in an omission that his counsel explicitly requested.

*Affirmed.*