Edward L. FORD, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–1100.

District of Columbia Court of Appeals.

Argued June 15, 1994.

Decided Oct. 3, 1994.

*Stempson,* 643 A.2d 902 (D.C.1993) (per curiam). The original decision is without precedential significance.

William E. Seals, Washington, DC, appointed by this court, for appellant.

Kevin F. Flynn, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

FARRELL, Associate Judge:

Appellant was found guilty by a jury of multiple armed offenses, including three counts of armed robbery. The crimes involved the robbery and assault of three individuals by appellant and two other persons. We do not recite the facts of the crimes further as they are immaterial to the lone issue necessitating this published opinion. That issue arises from the failure of the prosecutor to notify appellant until the Tues-

day evening before the start of trial on Thursday morning of the government's intention to introduce as *Drew*[1] evidence appellant's asserted failure to appear for his first scheduled trial. Appellant contends that the trial judge abused his discretion in not excluding the evidence because of the untimeliness of this disclosure, or at least in not granting him a continuance to attempt to secure witnesses to rebut the proffered evidence of his "consciousness of guilt." We find no abuse of discretion on the facts of this case, and affirm.[2]

### I.

■■■ The prosecutor filed with the trial court on January 31, 1992, a written Notice of Government's Intent to Use *Drew* Evidence, serving appellant with a copy by mail. The notice stated that the government would seek to introduce as proof of consciousness of guilt of the charged crimes appellant's failure to appear for trial as scheduled on October 31, 1991. The service copy of the notice bore a postmark of February 3, 1992. Appellant contended below, and the government does not dispute, that he received the notice in the mail on Tuesday evening, February 4. Jury selection began in appellant's case on Thursday, February 6. In a preliminary discussion of pretrial motions that morning, the prosecutor adverted to the *Drew* motion; appellant's counsel did not mention it. The rest of the day was devoted to jury selection. The next morning, Friday, the court took up the government's motion, and the prosecutor argued the admissibility of appellant's failure to appear under a succession of decisions of this court beginning with *Grant v. United States*, 402 A.2d 405 (D.C.1979). Appellant's counsel did not seriously dispute the relevance of the evidence, but claimed that it would be unfair to let the prosecution introduce it because the government had not formally charged the failure to appear as a BRA (Bail Reform Act) violation[3] and had given him no earlier notice of its intent to prove the conduct:

---

1. *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

2. We reject as well appellant's additional arguments concerning the admissibility of photo-

graphic evidence and the sufficiency of the evidence.

3. *See* D.C.Code § 23–1327(a) (1989).

Your Honor, . . . [w]e received [the notice] late [Tuesday] evening. I don't think that's a reasonable notice, given the fact that this case was set . . . for trial on Thursday. What they're essentially doing is trying the BRA [Bail Reform Act or failure to appear violation] within this case. The problem we have is that we can't prepare for it.

Mr. Ford was here that day [*i.e.,* October 31, 1991]. He indicated to me at the time when he was picked up and brought in on the bench warrant, he indicates that he was here. He told the judge that he was here on that date. He has witnesses who will be prepared to testify that he came to Superior Court and came into [the] courtroom. Now I haven't had an opportunity to do that because I'm preparing for this specific trial.

If I had been given notice, reasonable notice, I would have been able to prepare to defend him against this charge. The government has had ample opportunity to indict that BRA and we would have been on notice that it was indicted and that we had it prepared for trial. What they're attempting to do is to try this BRA and use it in their own sense without giving us any opportunity to prepare to rebut it.

The parties then discussed with the judge whether, in the absence of a formal rule of procedure or evidence governing the matter, the government was required to give advance notice to the defense of its intention to use *Drew* evidence.[4] Appellant did not amend his request that the evidence be excluded. The prosecutor, however, argued that the most appellant could legitimately ask for in the circumstances was a continuance to attempt to counter the evidence:

[I]f counsel is requesting a continuance in order to prepare for that[,] that seems to be the only remedy that he could possibl[y] ask for because he's been given notice before trial and that would be certainly his remedy. *And the question is whether he's asking for a continuance in order to prepare for that or not.* [Emphasis added.]

The judge disagreed that the court's options were so limited, but perceived no reason to exclude the evidence in this case:

Were the Court to be of a view that this is improper, the Court, I believe, would be within its right simply to not allow the presentation of the evidence. All right. The government—the Court is—the court has been informed of the government['s] intent to use this evidence and it will be allowed to do so. Anything else?

[The Prosecutor]: Not at this time, Your Honor.

THE COURT: Anything else?

[Defense Counsel]: No, Your Honor.

The jury was sworn, and for the remainder of that day the government presented the testimony of six witnesses about the facts of the charged offenses.

On Monday, February 10, appellant's counsel renewed his request for exclusion of the testimony the prosecutor planned to adduce that day about his failure to appear for trial. Counsel stated that he had "a real live witness out there that would establish that Mr. Ford did come to court that day," but that "I can't get that witness here." He understood that the court had already refused to bar the evidence, but stated that "I've done some work this weekend and I need to get that witness," since otherwise "Mr. Ford is going to have to testify with regard to [the *Drew* evidence], but he doesn't want to testify with regard to the actual case [*i.e.,* the charged offenses]." The judge pointed out that appellant was "basically . . . rearguing . . . something that was decided before," adding: "[I]f Mr. Ford wishes to take the stand, he can. If he wishes not to take the stand, he doesn't, but that's the kind . . . of choices people make every day." Appellant's counsel then moved for a mistrial, which the judge denied, whereupon counsel added: "All right. And, of course, that request for mistrial would be for [a] continuance so that we could—we could proceed." The judge resumed the taking of testimony.

---

4. The parties did not dispute the government's responsibility to seek a ruling from the trial court on the admissibility of such evidence out of the jury's presence before attempting to introduce it. *Day v. United States,* 360 A.2d 483, 485 n. 5 (D.C.1976).

## II.

Appellant only weakly disputes the relevance of the evidence that he had failed to appear for the first scheduled trial. Our decisions on point, though generally in the context of sustaining joinder of a formal charge of failure to appear with other offenses, leave no doubt about the relevance of this evidence to show consciousness of guilt. *Grant*, 402 A.2d at 408–09. *See also Washington v. United States*, 434 A.2d 394, 395 (D.C.1980) (en banc); *Russell v. United States*, 586 A.2d 695, 698 n. 4 (D.C.1991).[5] Appellant instead claims that he was unfairly prejudiced because the government did not reveal its intention to use this evidence until shortly before trial. In *Lewis v. United States*, 567 A.2d 1326 (D.C.1989), however, we pointed out that in this jurisdiction "there exists no specific rule that the government provide advance notice of its intention to introduce *Drew* evidence." *Id.* at 1329. The situation is different in the federal courts, where FED.R.EVID. 404(b) provides that, "upon request of the accused, the prosecutor ... shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any ... evidence [of other crimes] it intends to introduce at trial." We need not decide, of course, whether the government's disclosure of its intention two days before trial would meet hypothetical application of this rule in Superior Court; nor need we dwell on the absence of clear record evidence that appellant requested such pretrial disclosure.[6] In view of our disposition of this case, *infra*, consideration of whether a similar evidentiary requirement should be adopted for this jurisdiction, with whatever limitations,[7] can be left to another day.

The federal rule aside, appellant contends that in *Lewis, supra*, we impliedly recognized that the trial judge has authority to weigh surprise from the government's late disclosure of its intent to use other crimes evidence in the general balancing of probative versus prejudicial value that attends the admissibility of evidence generally, but especially *Drew*-type evidence. In sustaining as a proper exercise of discretion the judge's refusal to exclude the evidence there, we pointed to his reliance on the fact that the witness who eventually testified about the defendant's prior violent act had described the incident in testimony five months before trial, thus largely negating any claim of surprise. *Lewis*, 567 A.2d at 1329–30 & n. 7. We also rejected the defendant's argument that with advance notice of the prosecutor's intent he could have rebutted that evidence by the testimony of two witnesses who could not be located at the time of trial, stating: "Counsel did not ... detail the efforts made to locate these witnesses, nor specify what efforts could have been undertaken had he had more time. Nor did he seek a continuance." *Id.* at 1330 n. 8. Appellant argues that, unlike in *Lewis*, the government affirmatively (though not deliberately) misled him by not following its customary practice of formally charging a failure to appear (or BRA) violation and moving to consolidate it with the underlying charges;[8] hence his

---

5. As we stated in *Grant*, "[E]vidence of each joined offense would be admissible in a separate trial of the other"—specifically, the failure to appear "reflecting consciousness of guilt about the other charges." 402 A.2d at 408 (quoting *Coleman v. United States*, 298 A.2d 40, 42 (D.C. 1972), *cert. denied*, 413 U.S. 921, 93 S.Ct. 3070, 37 L.Ed.2d 1043 (1973)). *See also Washington*, 434 A.2d at 395 ("the knowledge of the bail charge would not be withheld from the jury even in a separate trial of these offenses").

6. All that appears on this point is appellant's counsel's reference to his general practice, telling the trial judge that "I've always filed it myself asking them to disclose whether they're going to [introduce *Drew* evidence]."

7. The Advisory Committee Notes to the federal rule explain, for example, that it does not apply to evidence "intrinsic" to the crime, which in this jurisdiction would be so-called *Toliver* evidence, *see Toliver v. United States*, 468 A.2d 958 (D.C.1983). A related question, raised by this case but which we do not decide, would be whether such a requirement should apply to post-crime conduct by the defendant in the case charged, introduced to show consciousness of guilt.

8. The prosecutor told the trial judge that the BRA violation had not been indicted because material was missing from the case jacket bearing on the notice to appear appellant had received, and the necessary transcript establishing that notice had only recently been received.

counsel prepared, as he stated to the trial judge, "for this specific trial." Appellant also contends that he requested a continuance to counter the proffered evidence, which the trial judge denied.

The government responds first that appellant could not have been ignorant of the real possibility the prosecutor would seek to use his failure to appear to prove guilt—specifically his awareness of his guilt—of the charged offenses. Appellant knew that at least the trial court believed he had failed to appear for trial, issuing a bench warrant at the time on which he was arrested in November 1991 and brought before the court. Unlike the evidence of separate prior conduct at issue in *Lewis,* the government argues, this court's decisions highlight the exceptional relevance of behavior in the *charged case* manifesting consciousness of guilt, whether indicted and joined for trial or not. *See, e.g., Allen v. United States,* 603 A.2d 1219, 1226 & n. 16 (D.C.1992) (en banc). It notes that in *Wages v. United States,* 594 A.2d 1053 (D.C. 1991), we left open the question whether a similar effort by the defendant to impede the trial process—there attempting to bribe the complaining witness—was even "other crimes evidence ... rather [than] circumstantial evidence of the crime charged." *Id.* at 1055.

There is substantial merit to the point that, whether analyzed as *Drew* evidence or not, an accused's post-crime behavior in the case charged from which inferences of awareness of guilt are commonly drawn is the sort of evidence he presumptively knows may be used against him at trial without formal notification. The government's departure from its "normal" practice of charging bail violation conduct as a separate crime would seem too thin to support a genuine claim of surprise. Moreover, asserted prejudice to the ability to prepare (through lack of notice) should bear some relation to the particular prejudice *Drew* evidence carries with it, *viz.,* the risk of conviction by proof of "propensity"; [9] but that risk is diminished when the acts in question are as conceptually different

as the armed robberies charged here and failure to appear.

We need not rest our decision on these considerations, however. Appellant effectively concedes on appeal that a continuance—rather than suppression of the evidence—would have been an adequate remedy for the prejudice he assertedly suffered from the prosecutor's belated disclosure. On this record, we do not think he has shown an abuse of discretion in the trial judge's failure to afford that remedy.

In asserting that he "requested a continuance," appellant presumably refers to his somewhat opaque statement to the judge following the weekend that his "request for a mistrial would be for [a] continuance...." Until that time appellant had not asked for one. In the discussion preceding the judge's ruling on Friday, only the prosecutor had suggested that at most appellant could properly request a continuance, so that the question—she stated—"is *whether* he's asking for a continuance in order to prepare for that or not" (emphasis added). Consistent with his position on Friday, appellant repeated his request on Monday that the evidence be excluded; only after the judge had declined to reconsider his ruling did counsel request a mistrial and, whether independently or not, a continuance.

Viewing the matter as of the time the judge ruled on Friday, we cannot say that he abused his discretion in failing to grant a continuance. Appellant had told the judge of the manner in which he felt himself prejudiced, but the remedy he asked for was exclusion—even in the face of the prosecutor's response that the most he could legitimately ask for was a continuance. We will not reverse the trial court on the ground that the latter remedy was somehow embraced within the former; counsel may have had his own reasons for insisting on the one remedy while renouncing the other. Nor, even if we assume appellant unmistakably requested a continuance on Monday, can we fault the judge's refusal to grant it at that point. By that time more than five days had elapsed

---

9. Otherwise it is difficult to conceive why advance disclosure of all the government's evidence should not be required.

since appellant received the government's pretrial notification; an additional day would pass before the start of the defense case. Yet appellant's counsel could report only that he had "done some work this weekend" and had "a real live witness out there" whom he could not "get ... here."[10] It was not an abuse of discretion for the judge to refuse to interrupt the trial in these circumstances, certainly without more concrete representations by the defense as to the identity of the witness, why counsel could not "get [him] here," and whether his attendance could be secured in the immediate future. *Lewis,* 567 A.2d at 1330 n. 8 (inadequacy of proffer as to unavailability of witness).

*Affirmed.*

Separate statement of Associate Judge FARRELL.

Our opinion today does not deal with, hence does not call into question, the practice of some Superior Court judges of requiring advance notice to the defense of the prosecution's intent to offer other crimes evidence. Also, prudence should counsel the government to comply voluntarily with FED.R.EVID. 404(b) in Superior Court, as it does mandatorily in the United States District Court. Were a succession of cases like this one and *Lewis v. United States,* 567 A.2d 1326 (D.C. 1989), to persuade this court to adopt a formal notice requirement, there is little question that among the sanctions available to the trial judge for noncompliance would be *exclusion* of the other crimes evidence—a prospect the government can hardly welcome.

NEWMAN, Senior Judge, dissenting:

"[W]here liberty is at stake, due process requires notice and opportunity appropriate to the nature of the case...." *Smith v. United States,* 583 A.2d 975, 979 (D.C.1990) (citing *Mullane v. Central Hanover Trust*

*Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). Finding the government's two-day notice to Ford regarding its intention to introduce *Drew* evidence to be inadequate under the circumstances, I must disagree with the majority's conclusion that the trial judge's refusal to grant a continuance did not amount to an abuse of discretion.[1]

It is true that there exists no specific rule in this jurisdiction requiring the government's pretrial disclosure of its intention to introduce *Drew* evidence against a defendant. *See Lewis v. United States,* 567 A.2d 1326, 1329 (D.C.1989).[2] However, the Federal Rules of Evidence and the federal courts require the government to *reasonably notify* a defendant prior to trial of its intention to introduce *Drew* evidence. *See* FED.R.EVID. 404(b); *United States v. Alex,* 791 F.Supp. 723, 729 (N.D.Ill.1992); *United States v. Williams,* 792 F.Supp. 1120, 1133 (S.D.Ind. 1992); *United States v. Long,* 814 F.Supp. 72, 74 (D.Kan.1993); *United States v. Evangelista,* 813 F.Supp. 294, 302 (D.N.J.1993); *United States v. Richardson,* 837 F.Supp. 570, 575–76 (S.D.N.Y.1993). "The purpose of the ... [notice requirement] is to reduce surprise and promote early resolution of the issue of admissibility." *Long, supra,* 814 F.Supp. at 73. *See also Williams, supra,* 792 F.Supp. at 1133 ("By receiving notice of the general nature of 404(b) evidence ..., surprise is avoided and the defendant has an adequate opportunity to challenge the admissibility of the information"). Thus, the notice requirement in Rule 404(b) is founded upon the principle of fundamental fairness. *See* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 9.09, at 22 (1994) ("The imposition of a requirement for pretrial notice [of uncharged misconduct evidence] seems both justifiable and salutary.... The

---

**10.** Counsel acknowledged that appellant himself could attest to his appearance for the first trial but that "he doesn't want to testify [on cross-examination] with regard to the actual case."

**1.** I disagree with the majority's view that Ford's defense counsel initially failed to properly make a continuance request before the trial court. The matter of a continuance was addressed by the trial judge in fact. Viewing the transcript in its

proper context, Ford's defense counsel initially complained that he did not have adequate time to prepare against the government's introduction of *Drew* evidence. When counsel for the government first suggested a continuance, as the appropriate remedy, the trial court summarily rejected any such relief.

**2.** In *Lewis,* I concurred in the result only. 567 A.2d at 1327.

advance notice allows the defense to investigate the incident to obtain rebuttal evidence and to think through the prosecution's possible theories of logical relevance"); 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[19], at 404–125 (1993) ("fairness dictates notice"); *e.g., United States v. Foskey*, 204 U.S.App.D.C. 245, 254 n. 8, 636 F.2d 517, 526 n. 8 (1980). Indeed, it was the desire to eliminate unfair surprise and to promote early resolution of admissibility which led to the 1991 amendment to Rule 404(b) incorporating a notice requirement. *See* FED.R.EVID. 404(b) Advisory Committee's Note, 1991 Amendments. Similarly, this court has acknowledged that some trial judges already impose a pretrial disclosure requirement as a matter of practice. *See Lewis, supra,* 567 A.2d at 1329.

The majority would prefer to leave for another day the question of whether this jurisdiction should impose a similar disclosure requirement in our court system. I would not. The instant case illustrates the need for such a disclosure requirement in order to avoid the type of unfair surprise caused to Ford by the government's failure to reasonably notify him of its intention to introduce evidence of uncharged misconduct. After failing to follow its general practice of charging an alleged BRA violation,[3] the government notified Ford two days before trial that it intended to introduce as *Drew* evidence his absence at a previously scheduled trial in order to demonstrate consciousness of guilt. Claiming that the government failed to provide reasonable notice, Ford argued that if adequate notice had been given, he would have been able to prepare to defend against the government's proffer of this *Drew* evidence. In addition, Ford informed the trial judge that there was a witness who could testify that Ford was present at the previously scheduled trial, but the witness was unavailable at that time. Despite these circumstances, the trial court refused to grant a continuance and admitted the *Drew* evidence.

I find it fundamentally unfair when the government through its own neglect and oversight fails to follow its customary procedure of formally charging a defendant with an asserted BRA violation and then is permitted by the trial court to introduce evidence of this uncharged misconduct at trial without having first provided the defendant adequate notice. Permitting the government to wait until almost the eve of trial before announcing its intention to introduce *Drew* evidence (that Ford was not present at his previously scheduled trial), and then admitting such evidence over timely objection, allows the government to inject substantially damaging evidence against Ford without affording him reasonable notice and an opportunity to defend against this evidence. *See generally Williams, supra,* 792 F.Supp. at 1133 (while "some cases might present facts which necessitate an earlier disclosure of the use of 404(b) evidence[,]" ten-day notice by the government would be sufficient). In essence, the government's failure to charge Ford with a BRA violation reasonably led him to believe that he would not be required to address the matter at trial. Mindful of the potential prejudice caused to a defendant by the admission of *Drew* evidence,[4] I conclude that the trial court's ruling deprived the defendant of a fair trial. As a matter of fundamental fairness, Ford was entitled to

---

3. The government generally includes, when warranted, a BRA violation in its indictment against a defendant. *See Hunter v. United States,* 606 A.2d 139, 140 n. 2 (D.C.1992), *cert. denied,* — U.S. —, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992); *Gray v. United States,* 600 A.2d 367, 368 (D.C. 1991); *Goldsberry v. United States,* 598 A.2d 376, 377 (D.C.1991); *Kelly v. United States,* 590 A.2d 1031, 1032 n. 1 (D.C.1991); *Russell v. United States,* 586 A.2d 695, 696 n. 1 (D.C.1991); *Grant v. United States,* 402 A.2d 405 (D.C.1979). The government's failure to do so in this case resulted from its own neglect and oversight.

4. When " 'evidence of prior crimes [or bad acts] reaches the jury, it is most difficult, if not impossible, to assume continued integrity of the presumption of innocence. A drop of ink cannot be removed from a glass of milk.' " *Robinson v. United States,* 623 A.2d 1234, 1238 (D.C.1993) (quoting *United States v. Daniels,* 248 U.S.App. D.C. 198, 205, 770 F.2d 1111, 1118 (1985)). *See Byrd v. United States,* 614 A.2d 25, 31 (D.C.1992); *Thompson v. United States,* 546 A.2d 414, 418–20 (D.C.1988); *Wheeler v. United States,* 470 A.2d 761, 769 (D.C.1983); *Jefferson v. United States,* 463 A.2d 681, 685 (D.C.1983); *Harris v. United States,* 366 A.2d 461, 463 (D.C.1976).

reasonable notice of the government's intent to introduce this *Drew* evidence at trial.

I would adopt a notice requirement patterned after Rule 404(b) of the Federal Rules of Evidence. Our authority to do so is the same we utilized in *Day v. United States,* 360 A.2d 483, 485 n. 5 (D.C.1976).